## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORTHWEST IMMIGRANT RIGHTS PROJECT,<br>    615 2nd Avenue, Suite 400<br>    Seattle, WA 98104,<br><br>                    Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br>    111 Massachusetts Avenue NW<br>    Washington, DC 20529,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19-cv-3283 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1.      This suit challenges a decision of the United States Citizenship and Immigration Services (USCIS) to change the standards applicable to individuals seeking waivers of the substantial fees that USCIS charges to apply for immigration benefits, including naturalization, lawful permanent residence, and humanitarian benefits that provide legal protections for survivors of domestic violence, human trafficking, and other crimes.

2.      USCIS's decision, implemented by USCIS through changes to a USCIS form, its instructions, and USCIS manuals, narrows the grounds on which individuals can qualify for fee waivers. The decision also makes it harder for individuals to apply for fee waivers by requiring that they obtain and submit certain specified forms of documentation from the Internal Revenue Service (IRS) or other sources.

3.      USCIS violated the procedural requirements of the Administrative Procedure Act (APA) by adopting the new fee-waiver form and its instructions, which limit applicants' ability to receive fee waivers, without undertaking notice-and-comment rulemaking. USCIS also failed to comply with the requirements of the Paperwork Reduction Act (PRA), the statute under which it purported to adopt the new form and instructions. Further, the revisions to the form, instructions, and USCIS manuals are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. USCIS failed to make clear its rationale for the changes, offered shifting and illogical justifications, and relied on assertions that lack supporting data, contradict each other, or contradict the data before the agency.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Venue is proper under 28 U.S.C. § 1391(e).

## PARTIES

6.      Plaintiff Northwest Immigrant Rights Project (NWIRP) is a nonprofit legal services organization founded in 1984 to defend and advance the rights of immigrants. To further its mission, NWIRP provides direct legal assistance in immigration matters to thousands of low-income individuals each year. NWIRP also provides immigration-related advice and information through community-based know-your-rights presentations and trainings offered to service providers and attorneys.

7.      Through its direct legal services, NWIRP helps low-income individuals seeking to apply for a range of immigration benefits, including visas, asylum, employment authorization, lawful permanent residence, and naturalization. It prioritizes serving individuals who are in

vulnerable circumstances or who face complex legal issues, including those who have been impacted by the criminal legal system.

8.      NWIRP's work includes helping survivors of domestic and sexual violence gain access to humanitarian protections. Principally, NWIRP represents these individuals in filing applications and petitions for benefits under the Violence Against Women Act (VAWA), a statutory framework that allows survivors of domestic abuse to apply for lawful permanent residence without having to rely on their abusers; T or U visas, immigration benefits that Congress created to help survivors of human trafficking or crimes; and employment authorization or lawful permanent residence.

9.      NWIRP also assists individuals who are seeking naturalization, many of whom have a disability or face other circumstances that may make the naturalization process complicated.

10.     Further, NWIRP helps children and youth seeking Special Immigrant Juvenile Status (SIJS), an immigration benefit available to those who were abandoned, abused, or neglected by their parents; individuals seeking asylum and related protections; and others.

11.     NWIRP serves the community from four offices spread across Washington State. Because of the high demand for its services, NWIRP maintains waiting lists of individuals seeking its services.

12.     Defendant USCIS is a component of the Department of Homeland Security (DHS), an agency of the federal government. USCIS adjudicates applications for lawful permanent residence, naturalization, and other immigration benefits, including SIJS, VAWA self-petitions, and T and U visas. By regulation, USCIS sets and charges filing fees for a number of immigration-benefit applications but allows waivers of certain such fees.

## BACKGROUND

13.     Each year, millions of individuals apply for immigration benefits that can transform their lives. These benefits include humanitarian benefits, such as T and U visas, VAWA self-petitions, asylum, and SIJS; employment authorization and lawful permanent residence, which establish individuals' right to live and work in the United States; and naturalization, which enables individuals to become citizens and fully participate in American life, including by voting.

14.     USCIS charges significant application fees for some benefits. For example, the agency charges $1,140 to apply to become a lawful permanent resident; $410 to request employment authorization; up to $455, plus an $85 biometrics fee, to replace a permanent resident card; and up to $640, plus an $85 biometrics fee, to apply for naturalization. The agency also charges $700 for an appeal in a naturalization matter, $675 for an appeal on VAWA self-petitions or T or U visas, and $930 for an application for a waiver of inadmissibility, which often accompanies a T or U visa application.

15.     For low-income individuals, USCIS application fees can be an insurmountable obstacle to applying for benefits.

16.     Forgoing an immigration-benefit application because the fee is too expensive can lead to devastating consequences for individuals. For example, a delay in seeking humanitarian benefits can mean that a survivor of domestic violence or trafficking will suffer longer at the hands of an abuser, without access to legal rights and protections. A delay in seeking to naturalize can mean missing the right to vote in upcoming elections or losing access to public benefits that depend on recipients naturalizing by a certain date. And in multiple circumstances, missing a filing deadline can mean that an individual loses the chance to receive the immigration benefit altogether.

17.     As a result, fee waivers are often essential to allow low-income immigrants reasonable access to vital immigration benefits.

**USCIS's Fee and Fee-Waiver Statute and Regulation**

18.     The Immigration and Nationality Act authorizes USCIS to set fees for adjudication and naturalization services at levels that ensure full cost-recovery, but also provides for fee waivers and exemptions. *See* 8 U.S.C. § 1356(m). The Act permits the agency to set fees to cover services "provided without charge to asylum applicants or other immigrants." *Id.* Further, it requires that DHS allow individuals seeking certain forms of humanitarian benefits, including T and U visas and VAWA benefits, "to apply for a waiver of any fees associated with filing an application for relief through final adjudication of the adjustment of status." 8 U.S.C. § 1255(*l*)(7). Additionally, the statute enumerates certain fee exemptions. *See* 8 U.S.C. § 1439(b)(4).

19.     By regulation, USCIS has established a fee schedule and provided for fee waivers and exemptions.

20.     Under the regulation's principal fee-waiver provision, 8 C.F.R. § 103.7(c), USCIS can waive listed fees if the requester is "unable to pay" and a waiver on this basis "is consistent with the status or benefit sought." 8 C.F.R. § 103.7(c)(1).

21.     Under 8 C.F.R. § 103.7(d), the USCIS director can permit additional fee waivers or exemptions.

**USCIS's Fee-Waiver Practice, 2011-2019**

22.     In 2011, USCIS released a memorandum (2011 Memorandum) amending its Adjudicator's Field Manual and titled "Fee Waiver Guidelines as Established by the Final Rule of the USCIS Fee Schedule; Revisions to *Adjudicator's Field Manual* (*AFM*) Chapter 10.9, *AFM*

Update AD11-26," https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2011/
March/FeeWaiverGuidelines_Established_by_the_Final%20Rule_USCISFeeSchedule.pdf.

23. The 2011 Memorandum stated that USCIS would generally review fee waiver requests under 8 C.F.R. § 103.7(c) "by considering, in a step-wise fashion," whether the individual fell into one of three categories. 2011 Memorandum at 2. First, USCIS would consider whether the individual was receiving a means-tested benefit: a benefit such as Medicaid or Supplemental Security Income for which eligibility, the amount, or both "are determined on the basis of the person's income and resources." *Id.* at 5. Second, USCIS would consider whether household income was at or below 150 percent of the federal poverty guidelines. *Id.* at 6. Third, USCIS would consider whether the individual was suffering financial hardship "that renders the individual unable to pay the fee." *Id.* at 7.

24. The three-part framework set forth in the 2011 Memorandum was reflected in form I-912, which individuals could use to request fee waivers under 8 C.F.R. § 107.3(c). But, USCIS did not require fee-waiver applicants to submit the I-912 form. Also, USCIS did not require applicants seeking fee waivers based on their income or hardship to obtain and submit documents from the IRS or provide any other specific form of documentation.

25. Under this 2011 framework, the first category—receipt of means-tested benefits—was the most common way for individuals to establish their eligibility for USCIS fee waivers. The second category—the income standard—was also used, but far less frequently. Individuals rarely received fee waivers with eligibility based on the third category—financial hardship.

26. For instance, a 2017 USCIS study showed that among granted fee-waiver requests, 71.9 percent relied on means-tested benefits to establish eligibility and 26.9 percent were based on income, leaving less than two percent that established eligibility based on financial hardship.

27.     In NWIRP's experience, submitting a fee-waiver application based on receipt of a means-tested benefit was the easiest and most reliable way to seek a fee waiver under the 2011 Memorandum. Both completion of the application and USCIS's adjudication of the request tended to be quick. Further, USCIS reliably granted fee-waiver applications accompanied by proof of means-tested benefits.

28.     By contrast, in NWIRP's experience, fee-waiver applications based on individuals' income or financial hardship often took longer to prepare, required more time for USCIS to adjudicate, or involved a higher risk of denial, including because the hardship standard is vague and applicants were often left in the position of proving a negative—the absence of financial resources to afford the fees.

29.     The amount of time it takes for an individual to prepare, and for USCIS to adjudicate, a fee-waiver application can be critical for individuals seeking access to immigration benefits because when USCIS denies a fee-waiver request, it returns the applicant's underlying petition or application. Although the individual may resubmit the petition or application, USCIS considers the filing date to be the date of the resubmission, not the date of the original submission. Thus, if USCIS rejects an individual's fee-waiver request, that action can make the applicant miss any filing deadline that arose while the fee-waiver request—with the underlying benefits application—was pending. Even if the applicant re-submits the benefit request with payment, it could be considered untimely.

**USCIS's Process for Changing the Fee Waiver Standard**

30.     In October 2019, USCIS changed the I-912 form and the form's instructions, set the 2011 Memorandum to expire, and added new sections to its Policy Manual.

31. Collectively, these changes significantly narrow USCIS's principal fee-waiver eligibility standard. They restrict eligibility to (1) individuals with household income at or below 150 percent of the federal poverty guidelines or (2) individuals suffering financial hardship. Further, they limit eligibility to those who show their income or hardship with specified types of documents. Under the new system, receipt of a means-tested benefits cannot establish an individual's eligibility for a fee waiver; an individual receiving such benefits and earning just over 150 percent of the federal poverty guidelines may receive a fee-waiver only after establishing financial hardship using required documentation.

32. Rather than promulgating a rule change, USCIS purported to adopt the new I-912 form and instructions under the PRA, a statutory scheme that provides for Office of Management and Budget (OMB) approval of agency-required collections of information.

**A. First Paperwork Reduction Act Notice**

33. On September 28, 2018, USCIS published in the Federal Register its first PRA information-collection notice indicating that it proposed to change the I-912 form and rescind the 2011 Memorandum. *See* 83 Fed. Reg. 49,120 (Sept. 28, 2018).

34. The September 2018 notice stated that "[t]he proposed revision would reduce the evidence required for Form I-912," by "no longer requir[ing] proof of whether or not an individual receives a means-tested benefit." *Id.* at 49,121.

35. The September 2018 notice additionally stated that "USCIS has found that the various income levels used in states to grant a means-tested benefit result in inconsistent income levels being used to determine eligibility for a fee waiver," and that "[t]herefore, the revised form will not permit a fee waiver based on receipt of a means-tested benefit, but will retain the poverty-guideline threshold and financial hardship criteria." *Id.*

36.     The September 2018 notice did not provide any other information to support or explain its assertion about states' benefits practices, did not discuss any other proposed changes to the I-912 form or its instructions, and did not discuss alternative ways to address the purported concern it raised.

37.     After publishing the September 2018 notice, USCIS posted materials online that showed specific proposed changes to the I-912 form and its instructions. Those materials made clear that USCIS was not proposing to reduce the evidence required to apply for a fee waiver. Instead, USCIS sought to make the standard for qualifying for a fee waiver stricter and more demanding. Principally, the proposed changes would:

    a.  Eliminate individuals' ability to qualify for fee waivers based on their receipt of means-tested benefits.

    b.  Require that individuals seeking to qualify for fee-waivers based on their income or financial hardship submit certain specified documentation, including, in many cases, tax transcripts or other documentation that individuals would have to obtain from the IRS.

    c.  Require individuals to submit fee waiver requests on the I-912 form and to do so individually, rather than combining family members' submissions into one.

38.     USCIS received 1,198 comments in response to its September 2018 notice.

**B. Second Paperwork Reduction Act Notice**

39.     On April 5, 2019, USCIS published in the Federal Register a second PRA information-collection notice regarding its proposal to change the I-912 form and rescind the 2011 Memorandum. *See* 84 Fed. Reg. 13,687 (Apr. 5, 2019).

40.     Similarly to the September 2018 notice, the April 2019 notice described the proposed changes as ones that "would reduce the evidence required for a fee waiver" and stated that the agency "found that the various income levels used in states to grant a means-tested benefit result in inconsistent income levels being used to determine eligibility for a fee waiver." *Id*.

41.     The April 2019 notice did not provide any information to support or explain its assertion about states' benefits practices, did not discuss any other proposed changes to the I-912 form or its instructions, and did not discuss alternative ways to address the purported concern it raised.

42.     With the April 2019 notice, USCIS again posted materials online showing the details of its proposed revisions. The agency's April 2019 proposal was similar to its September 2018 proposal, but some aspects were changed.

43.     USCIS also posted a document styled as a summary of and response to comments regarding the September 2018 notice.

44.     OMB and USCIS received 1,240 comments in response to the April 2019 notice.

**C. Third Paperwork Reduction Act Notice**

45.     On June 5, 2019, USCIS published in the Federal Register a third PRA information-collection notice indicating it proposed to change the I-912 form, rescind the 2011 Memorandum, and issue new guidance. *See* 84 Fed. Reg. 26,137 (June 5, 2019).

46.     Unlike the prior notices, the June 2019 notice described the proposed I-912 changes as "removing the means-tested benefit as a criterion in [the agency's] fee waiver request determinations, requiring the submission of Form I-912 to request a fee waiver, and clarifying what the evidentiary [sic] that will be considered for a fee waiver." *Id*. at 26,138.

47.     The June 2019 notice also provided a new reason for the proposed I-912 changes: limiting the number of fees waived. The notice stated: "USCIS has determined that without changes to fee waiver policy it will continue to forgo increasing amounts of revenue as more fees are waived. As a result, USCIS expects that DHS will be required to increase the fees that it charges for benefit requests for which fees are not waived." *Id.* It went on to state that: "In addition to curtailing the rising costs of fee waivers, this proposed policy change is intended to introduce more consistent criteria for approving all fee waivers. USCIS has found that the various income levels used in states to grant a means-tested benefit result in inconsistent income levels being used to determine eligibility for a fee waiver." *Id.* at 26,139.

48.     The June 2019 notice did not include any data or analysis to support or explain its assertion about USCIS fees and revenues, did not describe any proposed changes to the I-912 form other than the elimination of the means-tested benefit application-category, and did not discuss alternative ways to address the purported concerns it raised.

49.     The agency again posted materials online showing its proposed revisions. Those materials did not reflect substantive changes from those posted in April 2019.

50.     OMB and USCIS received 617 comments in response to the April 2019 notice.

**D. Submission to OMB and OMB Approval**

51.     On October 16, 2019, USCIS submitted proposed changes to its I-912 form and instructions to OMB for approval under the PRA as revisions to the agency's fee-waiver information-collection.

52.     USCIS's submission to OMB included documents styled as responses to the public comments received in response to the Federal Register notices and a "Supporting Statement" that included estimates of the information-collection burden and other OMB-required information.

53.     USCIS's submission to OMB also included a certification that the revised information collection satisfied certain PRA requirements.

54.     On October 24, 2019, OMB approved the proposed changes, despite concluding that USCIS had failed to comply with the Government Paperwork Elimination Act, Pub. Law No. 105-277, div. C, tit. XVII, 112 Stat. 2681, 2681-749 (1998).

55.     On October 25, 2019, USCIS finalized its new fee-waiver standard.

   a. It adopted and published the new I-912 form and instructions, which are very similar to those that USCIS published in connection with the June 2019 Federal Register notice.

   b. It released new sections in volume 1, part B of its online Policy Manual, which had not been submitted to OMB: chapter 3, regarding fees, and chapter 4, regarding fee waivers.

   c. It announced that on December 2, 2019, the new Policy Manual chapters would be effective and the October 2019 I-912 form would be required; similarly, USCIS would cease applying the 2011 Memorandum to fee-waiver applications postmarked on or after that date.

**The 2019 Fee-Waiver Standard**

56.     As revised in October 2019, the I-912 form and instructions establish a new, stricter standard for individuals to be eligible for fee waivers.

57.     First, to establish eligibility, each applicant must show household earnings at or below 150 percent of the federal poverty guidelines or financial hardship. Receipt of a means-tested benefit cannot establish eligibility, even if such benefit was based on an income standard that is consistent with the fee-waiver standard and even though receiving such a benefit

demonstrates that a government agency has already determined that the individual has limited financial means.

58.    Second, to establish eligibility based on income or hardship, individuals must obtain and submit certain types of required documentation.

a.  In most circumstances, individuals applying based on their household income must obtain from the IRS and submit tax transcripts or other IRS documentation regarding themselves and their household members. If individuals do not have income or are unable to provide proof of income, they must submit "documentation from the IRS that indicates no tax transcripts and no W-2s were found," as well as a description "in detail" of their situations. If household members paid taxes to foreign countries or U.S. territories, individuals may be required to obtain and submit tax transcripts from the relevant foreign countries or U.S. territories. USCIS, *Request for a Fee Waiver*, *Form I-912 Instructions*, at 6 (Oct. 24, 2019).

b.  Individuals that have or are applying for VAWA benefits or T or U visas can submit the revised I-912 form without certain required documentation, but only if they lack income or proof of income "due to [their] victimization," substantiate both their inability to pay and their inability to obtain documents, and "provide any available documentation of … income, such as pay stubs or affidavits from religious institutions, non-profits, or other community-based organizations verifying that [they] are currently receiving some benefit or support from that entity and attesting to [the applicants'] financial situation." *Id.* at 8, 9.

c.  In general, applicants cannot satisfy the revised standards by submitting state or federal agencies' benefit determinations or copies of filed tax forms.

59.     Third, under the revised standard, each applicant must complete the I-912 form, individually, to apply for a fee waiver.

60.     Fourth, the new standard requires other new information from applicants, including answers to questions about whether they and their family members filed tax returns and if not, why not.

61.     The October 2019 Policy Manual revisions include additional material. For example, they address scenarios, such as applications from children in foster care, that the revised I-912 form and instructions do not describe.

62.     The new Policy Manual chapter 4 states an interpretation of 8 U.S.C. § 1255(*l*)(7), the provision requiring DHS to permit fee-waiver applications for "any fees associated with filing an application for [certain types of humanitarian] relief through final adjudication of the adjustment of status." Without reference to the existing fee-waiver regulation, the chapter states that USCIS interprets this mandate "to mean that, in addition to the primary benefit request, an applicant who files any form that may be filed with the primary benefit request or the adjustment of status application must be provided the opportunity to file a fee waiver." USCIS, *Policy Manual, Chapter 4-Fee Waivers* (2019), https://www.uscis.gov/policy-manual/volume-1-part-b-chapter-4.

**USCIS's Attempts to Justify Its Narrowed Fee-Waiver Standard**

63.     In its Federal Register notices, USCIS asserted shifting and incomplete justifications for changing the I-912 form and its instructions and rescinding the 2011 Policy Memorandum.

64.     In material submitted to OMB, USCIS asserted other reasons for the changes. For example, USCIS suggested that it should not allow applications based on means-tested benefits because:

a.  Commenters' strong opposition to the proposed changes, growth in the economy and incomes, growth in fee waivers, and a decrease in unemployment together indicate that "means tested benefits are too easy to obtain for them to be good indicators of true inability to pay a USCIS fee." USCIS, *All Comments & Responses, 84FR13687* (at row 71), available at https://www.reginfo.gov/ public/do/PRAViewDocument?ref_nbr=201910-1615-006.

b.  The dollar-value of fee waivers granted has increased during an economic growth cycle; and in an entirely distinct rulemaking, another federal agency is attempting to cut back on states' flexibility to raise the income or asset limits for applying for food assistance.

c.  Applicants should not have to pay higher fees in order to help others "with incomes considerably above the poverty level" and without "financial hardship" apply for immigration benefits without paying filing fees. *Id.* at row 13.

d.  Fee waivers have grown more quickly than the number of individuals receiving benefits.

65.  Some or all of the asserted justifications and explanations are illogical, unsupported, or inconsistent with the changes that USCIS made to the fee-waiver standard.

66.  USCIS failed to address or respond meaningfully to relevant and significant issues raised in comment letters, such as the potentially severe consequences of delaying or forgoing applications for immigration benefits due to filing fees or the challenges of obtaining fee-waiver documentation on a timely basis; the importance of an easily-applied standard, such as receipt of means-tested benefits; and the impact of the proposed changes on individuals' ability to seek and

receive low-cost legal assistance from organizations that had relied on the 2011 Memorandum in developing models to serve clients effectively.

67.     USCIS rejected, without any supporting data or analysis, commenters' explanations of the extensive burdens the revised I-912 form and its instructions would impose on certain applicants.

68.     USCIS responded to other comments with explanations that ignored or contradicted data; contradicted existing law; were internally inconsistent; lacked supporting data; depended on assumptions about areas outside of USCIS's expertise; or relied on misrepresentations of the revised I-912 form, its instructions, or the 2011 Memorandum. For instance:

a.  USCIS stated that it "disagrees" with a commenter's assertion that the new standard "severely limits fee waiver eligibility," but elsewhere estimated that the standard will drastically reduce the number of fee waiver applications and asserted that changes are necessary precisely to reduce the number of waivers granted. *Id.* at row 8.

b.  USCIS suggested that the required documentation of income is the same as what individuals would submit to receive means-tested benefits, but elsewhere recognized that this is not the case.

c.  USCIS stated that T- and U-visa applicants and VAWA self-petitioners do not have to provide otherwise-required documentation if requesting it "would trigger further abuse or endanger" the applicant—an allowance that the I-912 form and instructions, as revised, do not state. *Id.* at row 97.

69.     In its submission to OMB, USCIS responded to some of the points identified without addressing the stated concerns, without explaining whether circumstances or USCIS's position had changed, or by rejecting, in conclusory ways, more measured alternatives.

70.     In its Supporting Statement, USCIS responded to OMB questions in conclusory or incomplete fashion and provided burden estimates that lacked supporting analysis and contradicted the record. For example, the Supporting Statement:

   a.   Asserted burden-related estimates without supporting data or analysis.

   b.   Ignored record evidence about the burdens associated with applying for a fee-waiver, including the agency's own recognition that applicants could incur costs to obtain required documentation from the IRS or translate forms into languages they can understand.

   c.   Included only a conclusory statement to show that USCIS had satisfied a PRA requirement that certain characteristics of the collection, if present, meet a "substantial need" or statutory requirement, 5 C.F.R. § 1320.5(d)(2).

71.     USCIS's certification that the revised I-912 form and instructions comply with PRA requirements was not supported by the record.

72.     The certification represented that the fee-waiver information-collection, as revised, "[i]s necessary for the proper performance of the functions of the agency, including [because] the information … collected will have practical utility"; "[r]educes to the extent practicable and appropriate the burden on persons who shall provide information to or for the agency"; "[i]s written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond"; "[i]s to be implemented in ways consistent and compatible, to the maximum extent practicable, with the existing reporting and recordkeeping practices of those who are to respond";

and satisfies other requirements. 5 C.F.R. § 1320.9; *see also* 44 U.S.C. § 3506(c)(3); 5 C.F.R. § 1320.5(a)(1)(iii)(A).

73.    The revised I-912 form and instructions do not match the certification. For instance:

    a.    The new form requires information and documentation that OMB did not show is necessary, such as an explanation of why any applicant or any member of an applicant's household did not file taxes the prior year.

    b.    The revisions serve only to increase burden on respondents, and the agency failed to consider obvious, less burdensome alternatives.

    c.    The record suggests that the revised form and its instructions could increase the agency's burden for processing individual fee-waiver requests, and USCIS' conclusory statements to the contrary were not backed by data.

    d.    The revised form and its instructions use complex and ambiguous terms and phrases, such as "hardship" and "due to [their] victimization," to describe requirements.

    e.    The revisions generally eliminate individuals' ability to apply for fee waivers based on means-tested benefits documentation or tax documentation they already have, and instead require documentation that is not compatible with the types of records that applicants may already have or be required to provide.

74.    In other ways as well, USCIS's submission to OMB made clear that USCIS lacked data to support its reasoning or to suggest that the changes would have their desired effect. For instance:

    a.    The submission showed that USCIS finalized the revised I-912 form and instructions without evaluating their fiscal impact on USCIS, despite asserting that

the agency needed to change the fee-waiver standard in order to avoid fee increases, and stating that budgetary considerations overrode concerns about the burden imposed by the revised form.

b.   USCIS stated that it is "confident" IRS can handle the increased workload that the new I-912 form and its instructions will generate, without any apparent data regarding the IRS's capabilities. USCIS, *All Comments & Responses, 84FR13687*, (at row 59), available at https://www.reginfo.gov/public/do/PRAViewDocument?ref_nbr=201910-1615-006. Further, USCIS's external consultations regarding the revisions to its fee-waiver information-collection did not involve consultation with the IRS.

c.   USCIS dismissed concerns that the new standard will increase its own workload and backlog, but provided no supporting data and did not suggest that the agency had planned for how it will handle applications under the revised standard.

**The Impact of USCIS's Revised Fee-Waiver Standard on NWIRP**

75.   Many of NWIRP's clients seek waivers of USCIS filing fees. When NWIRP helps clients apply for USCIS benefits, it also assists those clients with associated fee-waiver applications.

76.   Before USCIS's October 2019 changes to the fee-waiver standard, NWIRP routinely prepared fee-waiver applications based on clients' receipt of means-tested benefits. In these cases, NWIRP would advise a client receiving such benefits to bring documentation to his or her appointment. NWIRP staff could use this documentation to prepare a fee-waiver application in a matter of minutes.

77.     NWIRP also routinely prepared successful fee-waiver applications without the documentation required by the October 2019 I-912 form, even for clients who were not receiving means-tested benefits.

78.     Further, before USCIS adopted the October 2019 revisions to the I-912 form and instructions, set a date for the 2011 Memorandum to expire, and revised its Policy Manual, NWIRP submitted some fee-waiver applications without the I-912 form and in other cases, combined the fee-waiver applications for multiple members of the same family into one.

79.     By increasing documentation requirements, eliminating the most straightforward of the 2011 Memorandum's application criteria, and creating additional uncertainty about how an applicant can successfully establish eligibility for a fee waiver, the October 2019 I-912 form and its instructions, the expiration of the 2011 Memorandum, and the new Policy Manual sections will make applying for fee waivers a more time-consuming and uncertain process.

80.     The October 2019 I-912 form and its instructions, the expiration of the 2011 Memorandum, and the new Policy Manual sections thus impair NWIRP's ability to assist clients with immigration legal matters and implement other programs, and conflict with NWIRP's mission. In multiple ways, NWIRP will devote scarce resources to counteracting the harmful effects of these agency actions.

81.     For instance, the October 2019 I-912 form and its instructions, the expiration of the 2011 Memorandum, and the new Policy Manual sections will cause NWIRP to spend more time, per individual, assisting clients with fee waivers.

a.   NWIRP will have to spend substantially more time working with many of its fee-waiver clients to gather and review additional documentation. For example, NWIRP expects that collecting documents from the IRS could be particularly

challenging with its disabled or elderly clients or others who are likely to lack access to the Internet, accounts in their name, or other requirements for obtaining documents from the IRS online.

b.   NWIRP will spend more time assessing fee-waiver clients' tax situations due to the I-912 form's new questions about tax filing.

c.   NWIRP will also spend extra time counseling clients about fee waivers because of the additional uncertainty about how to establish eligibility for a fee waiver, whether individuals will need to resubmit fee-waiver applications with additional documents, and the timeline needed for achieving a favorable result.

82.     Increasing the time required to assist clients with fee-waiver applications and counsel clients on fee-waiver issues will mean that NWIRP must divert resources from serving other clients. As a result, NWIRP will not able to serve as many clients as it could previously.

83.     NWIRP also will divert resources to address the October 2019 revisions to the I-912 form and its instructions, the expiration of the 2011 Memorandum, and the new Policy Manual sections by advancing the application fees of certain clients who are facing urgent immigration deadlines, who are unable to proceed with their USCIS applications if they must pay application fees, and for whom NWIRP is now less certain whether USCIS will grant a fee waiver in time, due to the extra time required to compile an application under the revised fee-waiver standard, the uncertainty regarding USCIS's timeline for processing applications under the new standard, and the lack of clarity about what applicants must do to satisfy the new standard.

84.     NWIRP will additionally address the harm caused by the October 2019 revisions to the I-912 form and its instructions, the expiration of the 2011 Memorandum, and the new Policy Manual sections by devoting time to modifying its community-education and training materials.

NWIRP will need to adjust its materials not only describe the new agency actions and their importance, but also, in the future, to address complications that arise in the agency's application of them.

### FIRST CAUSE OF ACTION
#### (Failure to observe required procedure—Rulemaking)

85.     The APA empowers this Court to "hold unlawful and set aside" agency actions taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

86.     The October 2019 changes to the I-912 form and its instructions constitute a substantive and legislative rule that was subject to the notice-and-comment requirements of the APA, 5 U.S.C. § 553.

87.     USCIS did not conduct notice-and-comment rulemaking before changing the I-912 form and its instructions.

88.     By failing to engage in notice-and-comment rulemaking before adopting the October 2019 revisions to the I-912 form and its instructions, USCIS failed to observe procedures required by law, in contravention of the APA.

### SECOND CAUSE OF ACTION
#### (Agency action that is arbitrary, capricious, an abuse of discretion, or not in accordance with law—Revisions to I-912 form and instructions)

89.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

90.     USCIS failed to provide a reasoned explanation for the October 2019 revisions to the I-912 form and instructions. It has provided shifting, incomplete, and illogical explanations of the changes; asserted justifications that are unsupported by data, internally inconsistent, or in contradiction of the record or the law; made assertions about matters outside its expertise; provided

a certification to OMB that is not supported by the record; and failed to rationally connect the choices made to facts found.

91.     In issuing the October 2019 revisions to the I-912 form and instructions, USCIS relied on factors unrelated to individuals' ability to pay required fees, and failed to consider important aspects of the problem.

92.     USCIS did not identify the facts and circumstances underlying the 2011 Memorandum or explain whether or why it disregarded them.

93.     USCIS's I-912 form and its instructions omit directions that USCIS identified separately, in its Policy Manual, and did not explain.

94.     USCIS failed to consider significant and obvious alternatives to the October 2019 revisions to the I-912 form and instructions.

95.     The October 2019 revisions to the I-912 form and its instructions are arbitrary, capricious, or an abuse of discretion, in contravention of the APA.

### THIRD CAUSE OF ACTION
**(Agency action that is arbitrary, capricious, an abuse of discretion,
or not in accordance with law—Expiration of 2011 Memorandum)**

96.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

97.     USCIS provided no reasons for setting the 2011 Memorandum to expire, other than those offered to justify the October 2019 revisions to the I-912 form and its instructions. Those reasons are incomplete, unsupported, and otherwise inadequate, as described above.

98.     USCIS's establishment of an expiration date for the 2011 Memorandum is arbitrary, capricious, or an abuse of discretion, in contravention of the APA.

**FOURTH CAUSE OF ACTION**
**(Agency action that is arbitrary, capricious, an abuse of discretion,**
**or not in accordance with law—Policy Manual revisions)**

99.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

100.    USCIS provided no reasons to issue new sections of its Policy Manual, other than those offered to justify the October 2019 revisions to the I-912 form and its instructions. Those reasons are incomplete, unsupported, and otherwise inadequate, as described above.

101.    The Policy Manual's new chapter 4 incorrectly and unreasonably interprets 8 U.S.C. § 1255(*l*)(7), to the extent that such interpretation attempts to narrow individuals' ability to seek fee waivers for filings that are not made with a primary benefit request but that are made before final adjudication of an individual's adjustment of status.

102.    USCIS's new Policy Manual sections, regarding fees and fee waivers, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in contravention of the APA.

**FIFTH CAUSE OF ACTION**
**(Agency action that is arbitrary, capricious, an abuse of discretion,**
**not in accordance with the law, or taken without**
**observance of required procedure—Information collection revisions)**

103.    The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or taken "without observance of procedure required by law," *id.* § 706(2)(D).

104.    USCIS did not comply with the PRA requirement that, before revising its fee-waiver information collection, it first complete a multi-factor review that included an "objectively supported estimate of burden," 5 C.F.R. § 1320.8(a)(4); "[a] plan for the efficient and effective

management and use of the information to be collected, including necessary resources," *id.* § 1320.8(a)(7); and other elements, *id.* § 1320.8(a). *See generally id.* § 1320.5(a)(1)(i).

105.    Because they were inaccurate and incomplete, the agency's Federal Register notices did not satisfy the PRA requirement for USCIS to publish two Federal Register notices before revising its fee-waiver information-collection. *See* 44 U.S.C. §§ 3506(c)(2)(A), 3507(a)(1)(D); 5 C.F.R. §§ 1320.5(a)(1)(iv), 1320.8(d)(1), 1320.10(a).

106.    USCIS did not comply with the PRA requirement that, to obtain OMB approval for the October 2019 revisions to its fee-waiver information collection, it "demonstrate that it has taken every reasonable step to ensure that the proposed collection of information" "[i]s the least burdensome necessary," "[h]as practical utility," has not "shift[ed] disproportionate costs or burdens onto the public" in "seek[ing] to minimize the cost to [USCIS]," and meets other standards, *id.* § 1320.5(d)(1), as well as demonstrate in its OMB submission that certain characteristics of the collection, if present, satisfy a "substantial need" or a statutory requirement, *id.* § 1320.5(d)(2).

107.    USCIS failed to satisfy the PRA requirement that it provide a certification, supported by the record, that its fee-waiver information-collection, as revised, satisfies certain requirements. *See* 5 C.F.R. § 1320.9; *see also* 44 U.S.C. § 3506(c)(3); 5 C.F.R. § 1320.5(a)(1)(iii)(A).

108.    In adopting the October 2019 revisions to its fee-waiver information-collection, USCIS failed to observe procedures required by law, or took agency action that was arbitrary, capricious, an abuse of discretion, or not in accordance with the PRA, in contravention of the APA.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.    Declare unlawful and set aside the October 2019 revisions to the I-912 form and its instructions;

B.    Declare unlawful and set aside the October 2019 revisions to USCIS's fee-waiver information-collection;

C.    Declare unlawful and set aside USCIS's decision to cease applying its 2011 Memorandum;

D.    Declare unlawful and set aside the October 2019 revisions to the USCIS Policy Manual;

E.    Enjoin USCIS from implementing the October 2019 revisions to the I-912 form and its instructions, the expiration date on the 2011 Memorandum, the October 2019 revisions to the USCIS Policy Manual, and the October 2019 revisions to USCIS's fee-waiver information-collection;

F.    Award plaintiff its reasonable costs and attorney's fees under 28 U.S.C. § 2412; and

G.    Grant such other relief as this Court deems just and proper.

Dated: October 31, 2019                    Respectfully submitted,

/s/   Rebecca Smullin
Rebecca Smullin (D.C. Bar No. 1017451)
Michael T. Kirkpatrick (D.C. Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
202-588-1000

Counsel for Plaintiff
Northwest Immigrant Rights Project