IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| NORTHWEST IMMIGRANT RIGHTS ) | |
| PROJECT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-3283 (RDM) |
| ) | |
| UNITED STATES CITIZENSHIP AND ) | |
| IMMIGRATION SERVICES, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

I.      Statutory and Regulatory Background ............................................................................3

II.     The 2019 Revisions to the Form I-912 and Instructions.......................................................6

III.   This Litigation...............................................................................................................9

STANDARD OF REVIEW ................................................................................................ 9

ARGUMENT ................................................................................................................... 11

I.      Plaintiff's Lawsuit Should Be Dismissed. .........................................................................11

      A.     Plaintiff Lacks Article III Standing to Bring Its Claims Because It Has Not
            Shown A Frustration of Its Mission Or A Diversion of Resources Outside
            Its Normal Activities.................................................................................................. 11

            1.     Plaintiff's Organizational Harm Allegations Are Speculative And
                  Rely on The Decisions of Independent Third Parties, Which
                  Cannot Form A Basis For Standing. ...................................................... 13

            2.     Plaintiff's Diversion-of-Resources Allegations Relate Only to
                  Expenditures on "Ordinary Program Costs," Which Cannot
                  Constitute An Injury in Fact. .................................................................. 18

      B.     Plaintiff Is Outside the Zone of Interests Regulated by the Underlying
            Statute or Regulation.............................................................................................. 20

      C.     Plaintiff's Claim Against The Policy Manual Revisions Should Be
            Dismissed Because Those Revisions' Publication Is Not A Final Agency
            Action Subject To Judicial Review....................................................................... 22

      D.     Plaintiff's PRA Claim Should Be Dismissed Because That Statute
            Contains No Private Right Of Action. ................................................................. 23

II.     Plaintiff's Substantive Claims Lack Merit........................................................................24

      A.     USCIS's Revision Of Form I-912 Was Procedurally Proper. ............................. 24

            1.     The Form Revisions Do Not Constitute A "Legislative Rule"
                  Under The APA. ..................................................................................... 25

             2.     The Form Revision Is Governed By The Paperwork Reduction
                  Act, With Which The Agency Complied................................................. 33

      B.       The Revised Form Is Not Arbitrary And Capricious..............................................35

III.     The Court Should Not Grant a Nationwide Injunction.....................................................43

CONCLUSION...................................................................................................................45

# TABLE OF AUTHORITIES

## Cases

*AARP v. EEOC,*
  226 F. Supp. 3d 7 (D.D.C. 2016) .......................................................................... 10

*AFL-CIO v. Donovan,*
  757 F.2d 330 (D.C. Cir. 1985) ............................................................................. 36

*Alaska Dep't of Envtl. Conservation v. EPA,*
  540 U.S. 461 (2004) ............................................................................................. 38

*Alegent Health-Immanuel Med. Ctr. v. Sebelius,*
  34 F. Supp. 3d 160 (D.D.C. 2014) ....................................................................... 23

*Am. Chemistry Council v. Dep't of Transp.,*
  468 F.3d 810 (D.C. Cir. 2006) ............................................................................. 20

*Am. Hosp. Ass'n v. Bowen,*
  834 F.2d 1037 (D.C. Cir. 1987) ..................................................................... 27, 30

*Am. Mining Congress v. Mine Safety & Health Admin.,*
  995 F.2d 1106 (D.C. Cir. 1993) ........................................................................... 31

*American Postal Workers Union v. United States Postal Service,*
  707 F.2d 548 (D.C. Cir. 1983) ............................................................................. 32

*Appalachian Power Co. v. EPA,*
  251 F.3d 1026 (D.C. Cir. 2001) ........................................................................... 42

*Ark Initiative v. Tidwell,*
  816 F.3d 119 (D.C. Cir. 2016) ............................................................................. 35

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 10

*ASPCA v. Feld Entm't, Inc.,*
  659 F.3d 13 (D.C. Cir. 2011) ............................................................................... 20

*Batterton v. Marshall,*
  648 F.2d 694 (D.C. Cir. 1980) ....................................................................... 27, 28

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 10

*Bennett v. Spear,*
  520 U.S. 154 (1997) ....................................................................................... 22, 23

*Blue Ocean Inst. v. Gutierrez,*
  585 F. Supp. 2d 36 (D.D.C. 2008) ....................................................................... 10

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*,
   419 U.S. 281 (1974) ................................................................................................. 41

*Camp v. Pitts*,
   411 U.S. 138 (1973) ................................................................................................. 40

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ................................................................................................. 43

*City of Waukesha v. EPA*,
   320 F.3d 228 (D.C. Cir. 2003) ................................................................................ 40

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................. 11, 17, 19

*Clarke v. Sec. Indus. Ass'n*,
   479 U.S. 388 (1987) ................................................................................................. 21

*Cmtys. for a Better Env't v. EPA*,
   748 F.3d 333 (D.C. Cir. 2014) .......................................................................... 36, 38

*Coe v. McHugh*,
   968 F. Supp. 2d 237 (D.D.C. 2013) ....................................................................... 10

*Consumer Elecs. Ass'n v. FCC*,
   347 F.3d 291 (D.C. Cir. 2003) .................................................................... 38, 40, 42

*Ctr. for Auto Safety v. Peck*,
   751 F.2d 1336 (D.C. Cir. 1985) .......................................................................... 41, 42

*Ctr. for Responsible Sci. v. Gottlieb*,
   346 F. Supp. 3d 29 (D.D.C. 2018) .......................................................................... 12

*Dep't of Homeland Sec. v. New York*,
   140 S. Ct. 599 (2020) ............................................................................................... 43

*Dithiocarbamate Task Force v. EPA*,
   98 F.3d 1394 (D.C. Cir. 1996) ................................................................................ 23

*Electronic Privacy Information Center v. U.S. Department of Homeland Security*, (*EPIC*),
   653 F.3d 1 (D.C. Cir. 2011) ..................................................................................... 29

*Envt'l Working Grp. v. FDA*,
   301 F. Supp. 3d 165 (D.D.C. 2018) ....................................................................... 19

*Equal Rights Ctr. v. Post Properties, Inc.*,
   633 F.3d 1136 (D.C. Cir. 2011) .............................................................................. 14

*Fair Emp't Council v. BMC Mktg. Corp.*,
   28 F.3d 1268 (D.C. Cir. 1994) ................................................................................ 18

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) .......................................................................................... 36, 41

*Fed'n for Am. Immigration Reform, Inc. v. Reno*,
  93 F.3d 897 (D.C. Cir. 1996) .................................................................. 21, 22

*Fertilizer Inst. v. EPA*,
  935 F.2d 1303 (D.C. Cir. 1991) ..................................................................... 30

*Food & Water Watch v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ............................................................... *passim*

*Fund for Animals v. Babbitt*,
  903 F. Supp. 96 (D.D.C. 1995) ...................................................................... 10

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215 (1990) ....................................................................................... 11

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ................................................................................... 43

*Grid Radio v. FCC*,
  278 F.3d 1314 (D.C. Cir. 2002) ............................................................... 35, 36

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ......................................................................... 9

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ....................................................................................... 12

*Home Care Ass'n of Am. v. Weil*,
  799 F.3d 1084 (D.C. Cir. 2015) ..................................................................... 36

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) ....................................................................... 23

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
  510 U.S. 1301 (1993) ..................................................................................... 21

*Interstate Nat. Gas Ass'n of Am. v. FERC*,
  494 F.3d 1092 (D.C. Cir. 2007) ..................................................................... 20

*Int'l Acad. of Oral Med. & Toxicology v. FDA*,
  195 F. Supp. 3d 243 (D.D.C. 2018) ............................................................... 14

*James V. Hurson Assocs., Inc. v. Glickman*,
  229 F.3d 277 (D.C. Cir. 2000) ....................................................... 26, 27, 28, 29

*JEM Broad. Co. v. FCC*,
  22 F.3d 320 (D.C. Cir. 1994) ........................................................... 26, 27, 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014) ............................................................................. 20, 23

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ....................................................................................... 24

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992).............................................................................................. 9, 11

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990)............................................................................................ 20, 21

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994)................................................................................................. 44

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012)................................................................................................. 21

*Mendoza v. Perez,*
  754 F.3d 1002 (D.C. Cir. 2014)..................................................................... 26, 27, 32

*Motor Vehicle Mfrs. Ass'n v. State Farm,*
  463 U.S. 29 (1983)............................................................................................. 35, 43

*National Family Planning and Reproductive Health Association v. Sullivan,*
  979 F.2d 227 (D.C. Cir. 1992)................................................................................. 33

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
  (*NAHB*), 551 U.S. 644 (2007).......................................................................... 35, 43

*Nat'l Mining Ass'n v. McCarthy,*
  758 F.3d 243 (D.C. Cir. 2014)................................................................................. 26

*Nat'l Multi Hous. Council v. Jackson,*
  539 F. Supp. 2d 425 (D.D.C. 2008).................................................................... 30, 40

*Nat'l Sec. Counselors v. CIA,*
  931 F. Supp. 2d 77 (D.D.C. 2013).......................................................................... 28

*Nat'l Taxpayers Union, Inc. v. United States,*
  68 F.3d 1428 (D.C. Cir. 1995)................................................................. 12, 14, 18, 19

*New England Anti-Vivisection Soc. v. U.S. Fish & Wildlife Serv.,*
  208 F. Supp. 3d 142 (D.D.C. 2016)........................................................................ 20

*Orengo Caraballo v. Reich,*
  11 F.3d 186 (D.C. Cir. 1993)................................................................................... 31

*PDK Labs. v. DEA,*
  362 F.3d 786 (D.C. Cir. 2004)................................................................................. 25

*PETA v. USDA,*
  797 F.3d 1087 (D.C. Cir. 2015).......................................................................... 12, 13

*Pub. Citizen v. Dep't of State,*
  276 F.3d 634 (D.C. Cir. 2002)..................................................................... 26, 28, 30

*Shalala v. Guernsey Mem'l Hosp.,*
  514 U.S. 87 (1995)................................................................................................... 30

*Shibeshi v. United States*,
   920 F. Supp. 2d 105 (D.D.C. 2013) ........................................................................... 10

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ..................................................................................................... 13

*Spann v. Colonial Vill., Inc.*,
   899 F.2d 24 (D.C. Cir. 1990) ..................................................................................... 13

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ................................................................................. 10

*Stovic v. R.R. Ret. Bd.*,
   826 F.3d 500 (D.C. Cir. 2016) .............................................................................. 36, 38

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................. 11, 20

*Tex Tin Corp. v. EPA*,
   935 F.2d 1321 (D.C. Cir. 1991) ................................................................................. 42

*Thompson v. N. Am. Stainless, LP*,
   562 U.S. 170 (2011) ................................................................................................... 21

*Trudeau v. Fed. Trade Comm'n*,
   456 F.3d 178 (D.C. Cir. 2006) ................................................................................... 10

*Turlock Irr. Dist. v. FERC*,
   786 F.3d 18 (D.C. Cir. 2015) ..................................................................................... 20

*U.S. Ecology, Inc. v. U.S. Dep't of Interior*,
   231 F.3d 20 (D.C. Cir. 2000) ....................................................................................... 9

*Utility Air Regulatory Grp. v. EPA*,
   744 F.3d 741 (D.C. Cir. 2014) ................................................................................... 23

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
   749 F.2d 788 (D.C. Cir. 1984) ................................................................................... 43

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ................................................................................................... 44

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ................................................................................................... 19

## **Statutes**

5 U.S.C. § 553 ............................................................................................................ *passim*

5 U.S.C. §§ 701 *et seq.* .................................................................................................... 9

5 U.S.C. § 702 ................................................................................................................ 20

5 U.S.C. § 703 ............................................................................................................... 44

5 U.S.C. § 706 ................................................................................................... 25, 35, 36

8 U.S.C. § 1255 ................................................................................................................ 4

8 U.S.C. § 1356 ....................................................................................................... *passim*

28 U.S.C. § 2401 ............................................................................................................ 38

44 U.S.C. §§ 3501 *et seq.* .............................................................................................. 5

44 U.S.C. § 3501 ............................................................................................................ 33

44 U.S.C. § 3502 ............................................................................................................ 33

44 U.S.C. § 3506 ....................................................................................................... 9, 34

44 U.S.C. § 3507 ....................................................................................................... 9, 34

44 U.S.C. § 3508 ............................................................................................................ 34

Pub. L. No. 100-459, 102 Stat. 2186 (1988) .................................................................. 3

Pub. L. No. 101-515, 104 Stat. 2101 (1990) .................................................................. 3

Pub. L. No. 110-457, 122 Stat. 5044 (2008) .................................................................. 4

## Regulations

8 C.F.R. § 103.7 ...................................................................................................... *passim*

75 Fed. Reg. 40,846 (July 14, 2010) ............................................................... 5, 26, 32, 33

75 Fed. Reg. 58,962 (Sept. 24, 2010) ............................................................................ 5

81 Fed. Reg. 26,904 (May 4, 2016) ............................................................................... 5

81 Fed. Reg. 73,292 (Oct. 24, 2016) ............................................................................. 5

83 Fed. Reg. 49,120 (Sept. 28, 2018) ...................................................................... 7, 34

84 Fed. Reg. 13,687 (Apr. 5, 2019) ......................................................................... 7, 34

84 Fed. Reg. 1167-02 (Feb. 1, 2019) ........................................................................... 37

84 Fed. Reg. 13,687 (Apr. 5, 2019) ......................................................................... 7, 34

84 Fed. Reg. 26,137 (June 5, 2019) ..................................................................... *passim*

84 Fed. Reg. 62,280 (Nov. 14, 2019) ............................................................................ 8

**<u>Other Authorities</u>**

Approved Package,
    https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201910-1615-006# ................... 8

*HHS Poverty Guidelines for 2020*, U.S. Dep't of Health & Human Servs.,
    https://aspe.hhs.gov/poverty-guidelines .................................................................................... 16

*Welcome to Get Transcript*, Internal Revenue Service,
    https://www.irs.gov/individuals/get-transcript ..................................................................... 16

## INTRODUCTION

Fee waivers for immigration adjudication and naturalization services are not prescribed in any statutory provision.  Rather, Congress has authorized the Department of Homeland Security (DHS) to set such fees at a level that will recover the costs of providing some services at no cost to some applicants.  8 U.S.C. § 1356(m).  By regulation, DHS has provided, on a discretionary basis, fee waivers for certain services, subject to only two conditions: (1) the applicant is "unable to pay" the fee; and (2) a "waiver based on inability to pay is consistent with the status or benefit . . . ."  8 C.F.R. § 103.7(c)(1).  DHS also requires that waiver requests be in writing and state the reasons for and provide evidence in support of the claim of inability to pay.  *Id*. at § 103.7(c)(2).

Prior to 2010, U.S. Citizenship and Immigration Services (USCIS) and its predecessor offices exercised this discretionary authority by accepting and holistically reviewing ad hoc written waiver requests.  But in 2010, USCIS streamlined the fee waiver adjudication process, implementing a new form for submitting requests: the Form I-912 (Form).  The Form instructions detailed three types of evidence of inability to pay that USCIS would accept: (1) evidence of receipt of a means-tested benefit; (2) evidence of household income at or below 150% of the Federal Poverty Guidelines (FPG); or (3) evidence of financial hardship.  *See* Form I-912, Request for Fee Waiver Instructions (Sept. 24, 2010), AR36–42.  The instructions also stated that USCIS would still consider ad hoc written requests.  The implementation of the Form I-912 represented the first time USCIS accepted evidence of receipt of a means-tested benefit as per se evidence of inability to pay.

In the first six years that USCIS accepted evidence of receipt of a means-tested benefit to demonstrate inability to pay, the estimated annual revenue forgone due to fee waivers and

exemptions more than tripled, despite coinciding with a period of sustained economic growth. This was especially concerning for two reasons: (1) because the agency would have to raise other fees to compensate for the forgone revenue, and (2) because, since 1988, fees have served as the primary funding source for USCIS and are intended to cover the agency's operations fully.  While a number of factors may have contributed to the increase, USCIS determined that it must stem the tide.   Thus, in 2018, USCIS, in its discretion, undertook to revise the Form I-912 and its instructions to curtail the rising costs of fee waivers, reduce disparate treatment of similarly situated applicants, ameliorate concerns about the integrity of the fee waiver program, and improve the quality and consistency of fee waiver adjudications.  The revisions include: (1) eliminating acceptance of evidence of receipt of a means-tested benefit as per se evidence of inability to pay; (2) requiring income-based applicants to submit an Internal Revenue Service (IRS) tax transcript as evidence of income; and (3) requiring applicants to use the Form I-912 rather than another written format.  Applicants may still submit fee waiver requests based on financial hardship.

Notwithstanding that the statute and regulations afford USCIS significant discretion over whether and how to grant fee waivers, and that USCIS stated the reasonable basis for the Form revisions it implemented, Plaintiff—an organization that provides legal and other services to immigrants—now challenges the revisions.  That challenge fails to meet basic jurisdictional requirements and should be rejected.  First, Plaintiff—who has not included as a party or even identified a single applicant for immigration adjudication and naturalization services or for a fee waiver affected by the Form revisions—cannot demonstrate harm; to the contrary, the only effect felt by Plaintiff from USCIS's action is the continued obligation to do its job: assisting immigrants in navigating the ever-evolving immigration and naturalization process.  Without direct, cognizable harm, Plaintiff's lawsuit should be dismissed.  Moreover, Plaintiff is outside the "zone

of interests" protected by the underlying statute and regulations. Plaintiff's challenge to revisions USCIS made to its Policy Manual to coincide with the Form revisions should be dismissed because those revisions do not constitute final agency action reviewable under the Administrative Procedure Act (APA). Plaintiff's Paperwork Reduction Act challenge should be dismissed because that statute does not confer a private right of action. And Plaintiff's claims under the APA fail on the merits because USCIS's revisions of Form I-912 were procedurally proper, and are both reasonable and consistent with the regulation the agency implements.

Although Plaintiff disagrees with the manner in which USCIS exercised its discretion, it does not have standing to challenge what was a lawful exercise of agency discretion. Accordingly, Plaintiff's lawsuit should be dismissed. In the alternative, Defendant's cross-motion for summary judgment should be granted.

## BACKGROUND

### I.     Statutory and Regulatory Background

The Immigration Examinations Fee Account (IEFA) is the primary funding source of USCIS, a DHS component agency charged with receiving and processing (adjudicating) requests for lawful immigration to the United States. *See* Pub. L. No. 100-459 § 209, 102 Stat. 2186 (1988) (codified as amended in the Immigration and Nationality Act (INA) § 286(m)–(n), 8 U.S.C. § 1356(m)-(n)) (hereinafter "USCIS fee statute"). Fees for providing immigration adjudication and naturalization services are deposited into the IEFA and used to fund the provision of all such services, including services provided to asylum applicants and other immigrants at no charge. *See* Pub. L. No. 101-515, § 210(d)(1)–(2), 104 Stat. 2101 (1990).

The USCIS fee statute does not specifically mention fee waivers. *See* 8 U.S.C. § 1356(m). However, the statute directs that "fees for providing adjudication and naturalization services may

be set at a level that will ensure recovery of the full costs of providing all such services, including

the costs of similar services provided without charge to asylum applicants or other immigrants.

Such fees may also be set at a level that will recover any additional costs associated with the

administration of the fees collected." *Id.* DHS has interpreted that provision to vest the agency

with discretion to provide certain services for free in the form of total fee exemptions, or fee

waivers, subject to certain conditions or criteria.[1] As explained in the regulations promulgated

under this authority (hereinafter "USCIS fee regulations"), the fee waivers may be available where:

> (i)  The party requesting the benefit is unable to pay the prescribed fee.
> (ii) A waiver based on inability to pay is consistent with the status or benefit sought[.]

8 C.F.R. § 103.7(c)(1). To request a fee waiver, the "person requesting an immigration benefit

must submit a written request for permission to have their" fee waived. *Id.* § 103.7(c)(2). This

written request "must state the person's belief that he or she is entitled to or deserving of the benefit

requested, the reasons for his or her inability to pay, and evidence to support the reasons indicated."

*Id.* The regulation also lists the benefit applications for which a fee waiver is available. *Id.*

§ 103.7(c)(3).[2]

    USCIS previously allowed fee waiver applicants to submit requests in a variety of ways

and undertook a holistic analysis of the applicant's finances to determine inability to pay. *See*

Agency Information Collection Activities; Revision of a Currently Approved Collection: Request

---

[1] The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) requires DHS to permit certain applicants to apply for fee waivers for "any fees associated with filing an application for relief through final adjudication of the adjustment of status." *See* title II, subtitle A, sec. 201(d)(3), Pub. L. No. 110-457, 122 Stat. 5044 (2008); INA § 245(l)(7), 8 U.S.C. § 1255(l)(7). It does not specify or change the regulatory standard for granting such applications, however.

[2] 8 C.F.R. § 103.7(d) authorizes the USCIS Director to approve and suspend exemptions from fees or provide that the fee may be waived for a case or class of cases that is not otherwise provided in 8 C.F.R. § 103.7(c).

for Fee Waiver; Exemptions, 84 Fed. Reg. 26,137 (June 5, 2019), AR330 (Second 30-Day Notice).

In 2010, during the rulemaking concerning the current fee waiver regulations, *see* USCIS Fee
Schedule, 75 Fed. Reg. 58,962, 58,989 (Sept. 24, 2010) (2010 Final Rule), AR2, 29, DHS noted
that commenters had cited difficulty in navigating the fee waiver process.  USCIS agreed that the
fee waiver process would benefit from standardization and, accordingly, separately proposed a
new information collection request pursuant to the Paperwork Reduction Act, 44 U.S.C. §§ 3501,
*et seq.* (PRA), to facilitate the fee waiver process.  *See* Form I-912, Request for an Individual Fee
Waiver, 75 Fed. Reg. 40,846 (July 14, 2010); AR14.  As DHS explained in the 2010 Final Rule,
the Form I-912 would outline the evidence necessary to support a request for a fee waiver.  AR30.
As the original Form I-912, Request for Fee Waiver (Sept. 24, 2010), AR32–33, stated, USCIS
would generally waive fees for applicants who:

1. Were receiving a means-tested benefit;
2. Had a household income at or below 150% of the FPG; or
3. Were experiencing financial hardship due to extraordinary expenses or other
   circumstances that rendered the individual unable to pay the fee such as
   unexpected medical bills or emergencies.

AR32–33; AR36–42; *see also* USCIS Fee Waiver Memo (Mar. 13, 2011), AR43–50.

In 2016, after USCIS conducted a comprehensive fee review, DHS adjusted certain
immigration and naturalization benefit fees.  USCIS Fee Schedule, 81 Fed. Reg. 73,292 (Oct. 24,
2016) (2016 Final Rule), AR89.  The fee review demonstrated that current USCIS fees do not
recover the full costs of the services USCIS provides, and DHS determined that increasing fees
and adding a new fee were necessary "to fully recover costs [for USCIS services] and [to] maintain
adequate service."  AR90.  In the fee adjustment rulemaking, DHS noted that nearly half of the
increase was necessary to account for reduced revenue stemming from an increase in fee waivers
granted since FY 2010.  USCIS Fee Schedule, 81 Fed. Reg. 26,904, 26,910 (May 4, 2016) (2016

Proposed Rule), AR52, 58. As DHS explained in the final rulemaking, "the cost of providing services with a discount or without a fee must be transferred to those who pay a full fee" and, therefore, "USCIS takes a relatively careful position with respect to transferring costs from one applicant to another through the expansion of fee waiver eligibility." AR104. DHS also signaled that it "may in the future revisit the USCIS fee waiver guidance with respect to what constitutes inability to pay under 8 CFR 103.7(c)." AR70.

## II.     The 2019 Revisions to the Form I-912 and Instructions.

In 2018, USCIS undertook revisions to the fee waiver Form: (1) USCIS revised the evidence it would consider in evaluating inability to pay; (2) USCIS required federal income tax transcripts to demonstrate income; and (3) USCIS required use of the Form I-912 for fee waiver requests. Second 30-Day Notice, AR330–33. Notably, the revisions maintained fee waiver applicants' option to demonstrate inability to pay through evidence of financial hardship. *Id.*

First, since implementation of the 2011 policy guidance, USCIS had found that various income levels used in States to grant a means-tested benefit resulted in different eligibility determinations for applicants with the same income. *Id.* Therefore, to reduce disparate treatment of similarly situated requestors, ameliorate the concerns about the fee waiver program, and improve quality and consistency of fee waiver adjudications, USCIS decided to eliminate means-tested benefit receipt as per se evidence of inability to pay. *Id.* Second, USCIS frequently rejected applications with incomplete copies of tax returns or copies that were not signed or filed with the IRS to support fee waiver requests. *See* USCIS Responses to Public Comments on Form I-912 received during 60-Day comment period, AR242–49. In light of these documentary issues, USCIS determined that reliance on tax transcripts could reduce the number of rejected income-based requests. Finally, USCIS determined that permitting ad hoc requests increased the burden on

USCIS adjudicators.  Accordingly, USCIS decided to require submission of the Form I-912 for all fee waiver requests to support uniformity of the fee waiver process and reduce that burden.  *Id.*; Form I-912, Request for Fee Waiver, Supporting Statement for 2019 Revision, AR452.

On September 28, 2018, USCIS published a 60-day notice in the *Federal Register* requesting comments on the revised Form I-912 and instructions and posted the documents for review in docket USCIS–2010–0008 at www.regulations.gov.  Agency Information Collection Activities; Revision of a Currently Approved Collection: Request for Fee Waiver; Exemptions, 83 Fed. Reg. 49,120 (Sept. 28, 2018) (60-Day Notice), AR179.  USCIS received 1,198 comments on the 60-Day Notice.  Many comments focused on the means-tested benefit criterion and commenters' predictions about the effects of its removal; many addressed the tax transcript requirement for proof of income and the predicted burdens it would impose for applicants and advocacy organizations that serve them; and many proposed alternatives the commenters' would have preferred to the agency's proposal.  *See* AR242–49 (summarizing and grouping comments the agency received); *see, e.g.*, AR2936–40 (NWIRP's public comment to the proposed revisions). USCIS responded to the public comments and made changes to the Form and instructions based on the comments.  *See* AR242–49.  On April 5, 2019, USCIS published a second notice in the *Federal Register* informing the public that USCIS would be submitting the revised Form I-912 to the Office of Management and Budget (OMB) for review and clearance in accordance with the PRA, and providing an additional 30 days for public comments.  Agency Information Collection Activities; Revision of a Currently Approved Collection: Request for Fee Waiver, 84 Fed. Reg. 13,687 (Apr. 5, 2019) (First 30-Day Notice), AR250.  USCIS received 1,240 comments on the First 30-Day Notice.  Many comments reiterated objections to the predicted burdens imposed by the changes.  *See* AR314–29 (summarizing and grouping comments the agency received); *see,*

*e.g.*, AR3303–12 (NWIRP's public comment to the revised proposal).  USCIS again responded to

the public comments and made changes to the form and instructions based on the comments.  *See*

AR314–29.  On June 5, 2019, USCIS published a third notice in the Federal Register to notify the

public that it had submitted the revised Form I-912 to the OMB, and invite additional public

comments for 30-days.  AR330.  USCIS received 617 comments after publishing that notice.

USCIS did not make changes to the form and instructions based on public comments received on

the June 5, 2019 notice, but responded to the public comments in its submission to OMB.  *See*

AR397–406.  The Office of Information and Regulatory Affairs, OMB (OIRA) approved the form

changes on October 24, 2019.[3]  On October 25, 2019, USCIS published the revised Form I-912

and instructions, along with corresponding revisions to the USCIS Policy Manual and a Policy

Alert.  *See* AR484-514.  The revised Form and Manual took effect on December 2, 2019.[4]

On December 11, 2019, the revised Form was preliminarily enjoined, nationwide, by the

U.S. District Court for the Northern District of California.  *See* Order Granting Pls.' Mot. for

Nationwide Prelim. Inj., *City of Seattle v. DHS*, 3:19-cv-7151-MMC (N.D. Cal., Dec. 11, 2019),

ECF No. 65 (Nationwide Preliminary Injunction Order).  A third challenge to the 2019 Form

revisions has been filed by an organizational plaintiff in the U.S. District Court for the District of

---

[3] The approved package is available at
https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201910-1615-006#   (last   visited
Feb. 17, 2019).

[4] On November 14, 2019, USCIS published in the Federal Register a notice of proposed
rulemaking.  *See* USCIS Fee Schedule and Changes to Certain Other Immigration Benefit Request
Requirements, 84 Fed. Reg. 62,280 (Nov. 14, 2019) (hereinafter "Proposed Rule" or "November
2019 NPRM").  Following a comprehensive biennial fee review, USCIS determined that current
fees do not recover the full costs of providing adjudication and naturalization services, and the
Proposed Rule accordingly would adjust certain fees charged by USCIS and make additional
changes to other immigration benefit request requirements.  As relevant to this litigation, the
Proposed Rule would amend 8 C.F.R. § 103.7(c), the regulatory provision governing waiver of
fees associated with certain immigration adjudication and naturalization services.  *See* 84 Fed.
Reg. at 62,298–301.

Massachusetts.  *See Project Citizenship, Inc. v. DHS*, 38:19-cv-12362-DPW (D. Mass., Jan. 13, 2020).  Both of those challenges have been stayed pending the outcome of the November 2019 NPRM.  *See City of Seattle*, 3:19-cv-7151-MMC, ECF No. 76; *Project Citizenship, Inc.*, 38:19-cv-12362-DPW, ECF No. 11.

## III.    This Litigation

Plaintiff Northwest Immigrant Rights Project (NWIRP) challenges the 2019 revisions to the Form I-912 and the Policy Manual and USCIS's decision to stop applying the 2011 Form (collectively "the 2019 Form revisions" or "revisions"), bringing claims under the APA, 5 U.S.C. §§ 701 *et seq.* and the PRA, 44 U.S.C. §§ 3506–07.  Plaintiff filed the Complaint on November 1, 2019, ECF No. 1, and an Amended Complaint on November 21, 2019, ECF No. 9 (FAC).  On December 12, 2019, before Defendant's time to respond to the Amended Complaint had expired, and immediately after the preliminary injunction in *City of Seattle* issued, Plaintiff moved for summary judgment.  ECF No. 11 (NWIRP Mot.).

## STANDARD OF REVIEW

Under Rule 12(b)(1), a plaintiff seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the court has jurisdiction to hear its claims.  *See U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  As relevant here, a plaintiff's lack of constitutional standing is "a defect in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Because the elements necessary to establish jurisdiction are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In evaluating a motion to dismiss, "the Court must 'treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Shibeshi v. United States*, 920 F. Supp. 2d 105, 106 (D.D.C. 2013) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (alterations in original).

Under Rule 56, "[s]ummary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." *Blue Ocean Inst. v. Gutierrez*, 585 F. Supp. 2d 36, 41 (D.D.C. 2008). When summary judgment is sought under the APA, "the standard set forth in Rule 56(a) does not apply because of the court's limited role in reviewing the administrative record." *Coe v. McHugh*, 968 F. Supp. 2d 237, 239 (D.D.C. 2013). Instead, the "[c]ourt considers whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995). "Courts must 'liberally' defer to an agency's findings and sustain the agency's interpretation of its authorizing statute so long as that interpretation is 'legally permissible,' even if the court would otherwise adopt a different interpretation." *AARP v. EEOC*, 226 F. Supp. 3d 7, 23 (D.D.C. 2016).

## ARGUMENT

### I.   Plaintiff's Lawsuit Should Be Dismissed.

This Court lacks jurisdiction to address any of Plaintiff's claims because NWIRP lacks standing to bring them under Article III.   Even if Plaintiff could demonstrate the requisite perceptible harm and resulting diversion of resources, it would still fall outside the zone of interests protected by the underlying regulation and this Court should decline to exercise jurisdiction.

Additionally, Plaintiff's fourth cause of action, against the Policy Manual revisions accompanying the 2019 Form revisions, must fail because the Manual revisions do not constitute final agency action.   And Plaintiff's fifth cause of action, purportedly brought under the PRA, must fail because that statute contains no private right of action.

#### A.   Plaintiff Lacks Article III Standing to Bring Its Claims Because It Has Not Shown A Frustration of Its Mission Or A Diversion of Resources Outside Its Normal Activities.

A plaintiff bears the burden of establishing standing.  *Lujan*, 504 U.S. at 560.  "To seek injunctive relief, a plaintiff must show that [it] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (explaining the injury must be "certainly impending").   The necessary facts "must affirmatively appear in the record" and "cannot be inferred argumentatively from averments in the pleadings."  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  And the standing inquiry is especially rigorous where a plaintiff's "asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*."  *Lujan*, 504 U.S. at 562 (emphasis in original).

Plaintiff presumably asserts standing as an organization in its own right.  Accordingly, it

must satisfy the same test that applies to individuals. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995). The D.C. Circuit has set forth a two-part inquiry to determine whether an organization has pleaded a cognizable injury. First, a court must ask whether the defendant's action "injured the [organization's] interest." *Food & Water Watch v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). To allege such an injury, the organization must show that the defendant's conduct "perceptibly impaired [its] ability to provide services" or, in other words, "inhibit[ed] . . . [its] daily operations." *Id.*; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding the alleged injury must be "more than simply a setback to the organization's abstract social interests"). If the organization shows "an initial impairment to its programs," *Ctr. for Responsible Sci. v. Gottlieb*, 346 F. Supp. 3d 29, 41 (D.D.C. 2018), the court must next determine "whether the organization used its resources to counteract that harm," *Food & Water Watch*, 808 F.3d at 919. A diversion of the organization's resources "cannot alone constitute the harm. Holding otherwise would be hopelessly circular." *Ctr. for Responsible Sci.*, 346 F. Supp. 3d at 41.

In *Food & Water Watch*, the D.C. Circuit held that an organization that advocated for safe food systems failed to demonstrate a cognizable organizational injury and thus lacked standing to challenge poultry-inspection regulations promulgated by USDA. 808 F.3d at 921. Food & Water Watch alleged that the new regulations injured the organization by causing it to increase the resources it spent on educating the public and its members about the regulation's alleged negative effects and encouraging its members to avoid certain poultry products. *Id.* at 920. The Court held that FWW alleged "nothing more than an abstract injury to its interests," and that its alleged increased expenditure of resources did not demonstrate that its "organizational activities ha[d] been perceptibly impaired in any way." *Id.* at 921. By contrast, the D.C. Circuit in *PETA v. USDA*

held that PETA (an animal-welfare group) established standing to challenge the USDA's failure to promulgate bird-specific animal welfare regulations where the agency's inaction caused injuries "concrete and specific to the work" of PETA. 797 F.3d 1087, 1095 (D.C. Cir. 2015).  In particular, the Court held that USDA's failure to apply such regulations to birds had "'perceptibly impaired [PETA's] ability' to both bring [statutory] violations to the attention of the agency charged with preventing avian cruelty and continue to educate the public," and that PETA consequently expended resources to counteract that harm.  *Id.*

Plaintiff has not alleged sufficient facts to show either (1) a perceptible injury to Plaintiff's interest or (2) a diversion of resources.  Instead, its "abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art[icle] III." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)).

### 1. *Plaintiff's Organizational Harm Allegations Are Speculative And Rely on The Decisions of Independent Third Parties, Which Cannot Form A Basis For Standing.*

To establish the first requirement, a plaintiff must show that the defendant's conduct "perceptibly impaired [its] ability to provide services" or, in other words, "inhibit[ed] . . . [its] daily operations." *Food & Water Watch*, 808 F.3d at 919.  Plaintiff appears to base its organizational harm allegations on frustration of the organization's broader mission and its prediction that the 2019 Form revisions will require Plaintiff to spend more time and resources on a given applicant, making it more difficult for Plaintiff to achieve beneficial outcomes for more clients or otherwise advance its mission.  *See* FAC ¶¶ 85–94.  Neither theory proves sufficient for organizational standing's first requirement.

NWIRP points to no independent injury the revisions challenged in this suit will cause to the organization.  Instead, its allegations boil down to merely the harms Plaintiff speculates

unnamed third parties will face and "conflict with NWIRP's mission," FAC ¶ 90.  *Food & Water Watch* makes clear, however, that a showing of injury requires more than a "frustration of [the organization's] purpose" or mere allegations that the organization's "mission has been compromised."  808 F.3d at 919.  As the D.C. Circuit explained, "frustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'"  *Id.* (quoting *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1433); *see Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) ("a mere setback to [an organization's] abstract social interests" is not a cognizable injury for Article III standing); *Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 256-57 (D.D.C. 2018) ("mission conflict . . . alone does not confer standing").  In that sense, under Plaintiff's own theories, the revised Form makes its services *more* valuable to those it serves.

The impacts NWIRP does specify—"a more burdensome, time-consuming, lengthy, and uncertain process for individual applicants and for NWIRP, in serving its clients," FAC ¶ 89—are speculative and depend on third parties' independent choices.  First, while NWIRP may desire that its staff and volunteers spend more time on some applicants because of the revised Form, nothing about the revisions requires they do so.  Crucially, it appears Plaintiff already serves clients who use the unrevised Form I-912, use income- and hardship-based fee waiver applications, or do not need a fee waiver at all.  *Cf.* FAC ¶ 85–88 (revealing "[m]any" but not all NWIRP clients seek fee waivers or rely on means-tested benefits evidence, and some applicants do not receive such benefits).

The only real change to its practices that Plaintiff alleges rises to the level of cognizable injury, then, turns out to be the revised Form's tax return transcript requirement for proving inability to pay based on income—again, a requirement for applicants Plaintiff seeks to assist, not

Plaintiff itself.  First, this objection overlooks the option to demonstrate inability to pay based on financial hardship, an option some of Plaintiff's clients already use.  *Cf. id.*  This alternative for demonstrating inability to pay remains available, and also undercuts Amici's speculation that survivors of sexual assault and domestic abuse will be particularly harmed by the revisions.  *See* Amici Curiae Br. of Orgs. Serving Immigrant Survivors of Violence 10–13, ECF No. 21; *see also* AR473, 480–81 (2019 Form revisions permitting fee waiver applications that "demonstrate financial hardship, including . . . victimization").[5]  In fact, USCIS explained that the impacts on such groups "will actually be less pronounced than they will be on any other group and not more." AR248.  Contrary to Amici's assertions that the revisions impose "insurmountable" evidentiary burdens on these vulnerable groups, Amici Br. 15–16, Violence Against Women Act (VAWA) self-petitioners and applicants or petitioners for T and U nonimmigrant status "will not need to provide documentation of income from family members who are or [were] their abuser or human trafficker," "may provide affidavits or statements from religious organizations or advocacy groups with their Form I-912 to document income or lack thereof," and "will not be summarily rejected at intake when income information is not provided."  AR248.  The agency likewise addressed Amici's attacks on the financial hardship standard itself, Amici Br. 17–18, in its responses to public comments.  USCIS clarified it understands "those filers may need USCIS to apply more flexible standards in the types of documentation that they may submit with their fee waiver request," and reiterated what kinds of evidence would be helpful in adjudicating such requests.  AR248–49.

---

[5] Amici's predictions about the agency's application of the financial hardship option, Amici Br. 17–18, also boil down to speculation.  Applicants seeking a fee waiver, in particular those suffering financial hardship because of "victimization," AR480–81, can base their fee waiver request on evidence other than tax transcripts.  As with any fee waiver request, under the unrevised Form or under the revisions, it is then within the agency's discretion whether to grant the fee waiver based on the applicant's inability to pay.

What is more, though—in addition to eliminating the evidentiary issues of some applicants using unsigned or unfiled tax returns as proof of income—requesting a tax transcript turns out to be relatively straightforward:  an individual need only submit a request by mail that includes an Individual Tax Identification Number or Social Security Number, date of birth, and mailing address from the individual's last tax return.  *Welcome to Get Transcript*, Internal Revenue Service, https://www.irs.gov/individuals/get-transcript (last visited Feb. 14, 2020).  An individual may also use the automated phone transcript service toll-free.  *Id.*  Transcripts then arrive in "5 to 10 calendar days."  *Id.*[6]  And all that is needed then is a straightforward comparison of the applicant's income and 150% of the FPG.[7]  Such a process hardly requires upending Plaintiff's current practices for advising fee waiver applicants, or any significant effort to retrain staff or volunteers to assist applicants (who could already use proof of income, including tax returns or transcripts, to demonstrate inability to pay).  Plaintiff, presumably, does not turn away all such applicants.  Moreover, there are several steps Plaintiff can, and presumably already does, use to reduce the time spent on an applicant:  inform prospective clients of the Form and required proof before meeting with them; provide clients who do not already have the requisite proof with instructions for obtaining it; and refer particularly complex cases to one-on-one services.  Plaintiff's prediction of spending more time on applicants thus turns out to be based on its inability to adequately inform prospective clients of the requirements in advance of any meeting, its

---

[6] There is also an online option for individuals with a social security number, email account, personal account number from a credit card, mortgage, home equity loan, home equity line of credit, or car loan, and a mobile phone with the applicant's name on the account.  *Welcome to Get Transcript*, Internal Revenue Service.  Plaintiff focuses entirely on these requirements, while ignoring the straightforward (and relatively quick) mail and phone options.  FAC ¶ 91(a).

[7] Those Guidelines are also straightforwardly laid out online.  *See HHS Poverty Guidelines for 2020*, U.S. Dep't of Health & Human Servs., https://aspe.hhs.gov/poverty-guidelines (last visited Feb. 17, 2020).

speculation about clients' preparedness to request a waiver, or its own *desire* to spend more time on individual applications.  None is a cognizable harm because none is certainly impending, *see Clapper*, 568 U.S. at 414; none is traceable to Defendant; and the first two are typical activities for an organization that already instructs its clients to prepare and provide necessary documentation.  In any event, Plaintiff has not established standing.

Plaintiff further intimates that more time may be required to assist more applicants because more applicants may be rejected under the revised Form and have to resubmit.  *See* FAC ¶¶ 89, 91.  But its allegations fail to include any facts showing beneficial outcomes will be less likely for their clients who apply for fee waivers.  *See Clapper*, 568 U.S. at 409.  In other words, Plaintiff has not alleged any facts tending to show that its clients would have been granted fee waivers before the Form revisions but will be among those requests that would be rejected under the Form revisions.  On the contrary, one of the reasons USCIS made the revisions was to *reduce* the number of rejected applications by creating more clarity in the documentation needed to demonstrate inability to pay.  *See, e.g.*, AR321.  Another reason was to increase the agency's efficiency and speed processing applications.  *See, e.g.*, AR149.  Moreover, a fee waiver applicant who is denied may resubmit their request at any time without prejudice.  AR473.

Again, Plaintiff seeks to assist immigrants applying for naturalization; the Form revisions do not frustrate that mission.  Plaintiff may now prefer a narrower reading of that mission— effectively arguing entitlement to a particular application timeline or evidentiary basis for (unidentified, non-party) applicants that has never been guaranteed, or to a particular type of client service model—but affecting that preference does not amount to an Article III injury.  Plaintiff's speculation about the Form revisions' effects on those unnamed applicants and, in turn, itself, does not confer standing.

**2.** ***Plaintiff's Diversion-of-Resources Allegations Relate Only to Expenditures on "Ordinary Program Costs," Which Cannot Constitute An Injury in Fact.***

The second prong for organizational standing requires a plaintiff to show that it "used its resources to counteract" the harm it demonstrated for the first prong. *Food & Water Watch*, 808 F.3d at 919. A court need not reach this requirement if a plaintiff's harm-to-mission allegations prove insufficient. *See id.* If a court does reach the diversion-of-resources prong, however, a plaintiff's decision to shift expenditures among "ordinary program costs" in furtherance of the same organizational mission is insufficient to confer standing. *Nat'l Taxpayers Union, Inc.*, 68 F.3d at 1434; *see also Fair Emp't Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994) (finding "self-inflicted" harm, resulting "not from any actions taken by [the defendant], but rather from [the organization's] own budgetary choices," insufficient). In other words, "[a]n organization cannot convert its ordinary program costs into an injury in fact." *Nat'l Taxpayers Union, Inc.* 68 F.3d at 1434.

Plaintiff does not satisfy the diversion-of-resources requirement for organizational standing. The Amended Complaint includes only a conclusory allegation "that NWIRP must divert resources from serving other clients." FAC ¶ 92. The Motion for Summary Judgment and accompanying declaration clarify that Plaintiff will "devot[e] its resources to counteracting the effects of [the Form revisions]," Barón Decl. at ¶ 38, ECF No. 11-1, "will not be able to serve as many clients as it could previously, in a particular period of time," *id.* at ¶ 40, "will use its resources to advance the application fees of clients" whom it thinks need such an advance, *id.* at ¶ 41, and "will devote more staff time to modifying its community-education and training materials and providing training on fee-waiver issues, " *id.* at ¶ 44. *See also* NWIRP Mot. 20 (summarizing resources Plaintiff intends to divert). None proves availing.

First, Plaintiff's alleged resource diversions are entirely consistent with its ordinary program

18

costs.   Advocating over an immigration-related policy, serving fee waiver applicants, advancing application fees for clients, and modifying education and training materials on fee waiver requests all fall well within NWIRP's bailiwick as an immigration legal services organization.  Its internal choices over how to allocate resources among those priorities do not confer standing.  *See Nat'l Taxpayers Union, Inc.* 68 F.3d at 1434; *see also Envt'l Working Grp. v. FDA*, 301 F. Supp. 3d 165, 171 (D.D.C. 2018) (quoting *Food & Water Watch*, 808 F.3d at 920) ("[A]n organization does not suffer an injury in fact when it expends resources to educate its members and others unless doing so subjects the organization to operational costs beyond those normally expended.").  Were it otherwise, any organizational plaintiff could manufacture standing over nearly any change in federal policy, just by choosing to spend more time advising clients, updating its materials, and providing updated advice to those it advises.  But at least some of Plaintiff's clients, staff, and volunteers already use the unrevised Form (as opposed to ad hoc submissions) and help or instruct applicants how to complete income- or hardship-based fee waiver requests.  The 2019 Form revisions work no significant change in this regard, let alone one outside Plaintiff's normal activities.

Second, standing for injunctive relief requires an injury that is "certainly impending." *Clapper*, 568 U.S. at 401 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  With over a year of notice the revisions were coming, the fact that Plaintiff does not make specific allegations about any actual diversion of resources to date is telling—all the more so given that the Form revisions were in effect for over a week in December 2019 before being preliminarily enjoined. The Amended Complaint contains no specific amounts of resources diverted or planned to be diverted at all.  Similarly, Plaintiff's advocacy choices and decision whether to advance application fees for certain clients are proactive choices, not a necessary response to any certainly impending injury.  "[S]uch budgetary choices merely reflect [the organization's] shifting priorities"—a type

of harm that D.C. Circuit precedent has long held "amounts to a 'self-inflicted' wound." *New England Anti-Vivisection Soc. v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 167 (D.D.C. 2016) (quoting A*SPCA v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) and *Turlock Irr. Dist. v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015)).

In short, because Plaintiff has failed to allege the necessary harms, resulting expenditures, or "inhibition of the organization's daily operations," it lacks standing. *Food & Water Watch*, 808 F.3d at 919.[8]

**B.      Plaintiff Is Outside the Zone of Interests Regulated by the Underlying Statute or Regulation.**

Even if Plaintiff could establish standing, its claims would still fail because they are outside the zone of interests served by the fee statute, 8 U.S.C. § 1356(m), and fee waiver regulation, 8 C.F.R. § 103.7(c)(3).   "Whether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).   In the APA context, the zone-of-interests requirement ensures that the party seeking review of an agency action is "'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (quoting 5 U.S.C. § 702).   And to be "'adversely affected or aggrieved . . . within the meaning' of a statute, the plaintiff must establish

---

[8] Plaintiff does not appear to assert associational standing.   Nor could it, because to establish associational (also known as representational) standing, a plaintiff must show that "at least one of its members has standing [to sue] in its own right," among other requirements. *Interstate Nat. Gas Ass'n of Am. v. FERC*, 494 F.3d 1092, 1095 (D.C. Cir. 2007).   Plaintiff cites no specific individual at all, let alone one of its members, which is fatal to any attempt to establish associational standing. *See Summers*, 555 U.S. at 498 (requiring association to "name the individuals who were harmed"); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 820 (D.C. Cir. 2006) (requiring "identity" of injured member to be "firmly established").

that the injury he complains of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.*  Notably, a plaintiff falls outside the zone when its "interests are . . . marginally related to or inconsistent with the purposes implicit in the statute," *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 399 (1987), *even if* it "might technically be injured in an Article III sense," *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

Plaintiff falls outside the zone of interests served by the USCIS fee statute and regulation. This case concerns a process by which individual applicants for immigration adjudication and naturalization services can request a fee waiver.  It is those applicants, not an organization that provides them with advice, who "fall 'within the zone [of interests] . . . protected" by § 1356(m) or § 103.7(c)(3), because they are the "reasonable—indeed, predictable—challengers" to fee waiver decisions. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 227 (2012).  Plaintiff cannot purport to assert interests on these applicants' behalf because it lacks associational standing and Plaintiff's own purported interests (in maximizing the number of applicants it serves and avoiding changes to its client service model) are not even "marginally related" to those of an applicant seeking a fee waiver to apply for naturalization.  *Cf. INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301, 1302, 1304–05 (1993) (O'Connor, J., in chambers) (concluding that relevant INA provisions were "clearly meant to protect the interests of undocumented aliens, not the interests of organizations [that provide legal help to immigrants]," and that the fact that a "regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect"); *Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 899 (D.C. Cir. 1996) (dismissing under zone-of-interests test where plaintiffs relied on

incidental effects of challenged policy on their staff).  The fee statute provides

> [t]hat fees for providing adjudication and naturalization services may be set at a
> level that will ensure recovery of the full costs of providing all such services,
> including the costs of similar services provided without charge to asylum applicants
> or other immigrants.  Such fees may also be set at a level that will recover any
> additional costs associated with the administration of the fees collected.

8 U.S.C. § 1356.  And the implementing regulation highlights both the discretionary nature of fee

waivers and the burden an applicant must bear to obtain one.  8 C.F.R. § 103.7.  Neither implicates

the organizational Plaintiff's purported interests here, so Plaintiff lacks standing.

### C. Plaintiff's Claim Against The Policy Manual Revisions Should Be Dismissed Because Those Revisions' Publication Is Not A Final Agency Action Subject To Judicial Review.

The target of Plaintiffs' challenge, in their parlance, is the "October 2019 fee-waiver

actions," collectively referring to the revised Form I-912, the decision to stop applying the 2011

Memorandum, and the October 25, 2019 publication of a revised section of the USCIS Policy

Manual regarding fees for immigration benefit requests.  *See* FAC ¶¶ 110–113.  However, the

Policy Manual revisions do not constitute reviewable final agency action under the APA, so

Plaintiff's fourth cause of action should be dismissed.  *See id.*; NWIRP Mot. 38–39.

"[T]wo conditions must be satisfied for agency action to be 'final'": (1) "the action must

mark the consummation of the agency's decisionmaking process" and "not be of a merely tentative

or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been

determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–

78 (1997) (citation and internal quotation marks omitted).

Here, the agency action that effected the change to waiver requests was the revision of the

Form I-912 and its instructions, and the Policy Manual revisions merely restate the requirements

for fee waiver requests that are already prescribed in the Form and its instructions.  Had the Policy

Manual revisions not issued, waiver applicants would still have to comply with the revised Form I-912 requirements (mandating use of the Form, eliminating acceptance of receipt of a means-tested benefit as per se evidence of inability to pay, and requiring submission of tax transcripts) as of December 2, 2019.  Thus, publication of the Policy Manual revisions is not "action . . . by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *id.* at 178, and has no practical or legal independent effect.  Accordingly, the Policy Manual revisions are not "final agency action" and the Court lacks jurisdiction to entertain Plaintiffs' APA challenge to them.  *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004) (Roberts, J.) (concluding agency document that merely "restat[ed] EPA's established interpretation of the . . . regulation, . . . tread no new ground," and "left the world just as it found it . . . cannot be fairly described as implementing, interpreting, or prescribing law or policy" and thus "is not reviewable agency action").[9]

### D. Plaintiff's PRA Claim Should Be Dismissed Because That Statute Contains No Private Right Of Action.

Courts have made clear that the PRA "does not afford an independent cause of action; it merely serves as a defense to an enforcement action."  *Utility Air Regulatory Grp. v. EPA*, 744 F.3d 741, 750 n.6 (D.C. Cir. 2014); *see Dithiocarbamate Task Force v. EPA*, 98 F.3d 1394, 1405 (D.C. Cir. 1996).  Accordingly, while a plaintiff may attempt "to use the PRA as a shield against [a] penalty that [an agency] has imposed on it," it cannot use the Act as "a sword to persuade the Court to find the [agency] in violation of the PRA."  *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 170 (D.D.C. 2014).  Plaintiff cites no authority to the contrary.

---

[9] For similar reasons, Plaintiffs' challenges to the Policy Manual revisions are not redressable and therefore must fail.  *See Lexmark Int'l, Inc.*, 572 U.S. at 125.

Plaintiff's fifth claim states "USCIS did not comply with the PRA" and its requirements. FAC ¶¶ 115–19; *see also* NWIRP Mot. 40–42.  Even if these allegations were true, there exists no private right of action for Plaintiff to assert under the PRA, so this claim should be dismissed.

## II.    Plaintiff's Substantive Claims Lack Merit.

Even if Plaintiff could establish standing, its claims should be rejected.  Plaintiff raises two main APA claims, arguing that USCIS's revision of Form I-912 and its instructions was (1) procedurally improper, and (2) arbitrary and capricious.[10]  But USCIS followed proper procedures to effect reasonable Form revisions consistent with its authority under 8 C.F.R. § 103.7(c)(2) and supported by the record after due consideration of the relevant factors.  Plaintiff accordingly fails to meet its burden for summary judgment, and summary judgment should be granted in Defendant's favor.

### A.   USCIS's Revision Of Form I-912 Was Procedurally Proper.

Plaintiff argues that USCIS did not comply with the APA's notice-and-comment procedures, 5 U.S.C. § 553, when making the 2019 Form revisions, but these procedures do not apply to the agency's actions.  Under the APA, agencies must follow specific notice-and-comment procedures before adopting "legislative" or "substantive" rules.  *Lincoln v. Vigil*, 508 U.S. 182, 196 (1993).  Where this requirement applies, an agency must notify the public of proposed rules, *see* 5 U.S.C. § 553(b), and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," *id.* § 553(c).  But the challenged actions here are not legislative or substantive, and USCIS complied with applicable procedures in revising the Form, including by providing ample notice of and opportunity to

---

[10] Plaintiff's additional causes of action against the decision to set the 2011 Memorandum to expire and the revisions to the Policy Manual collapse into the same procedural and arbitrary and capricious analyses as the Form revision, so Defendant addresses them together in this Part.

comment on those revisions pursuant to the PRA. Therefore, the 2019 Form revisions were procedurally proper and Defendant is entitled to summary judgment.

Even if the revisions were substantive rules, any procedural error was harmless. The APA instructs courts to "take due account of the rule of prejudicial error," 5 U.S.C. § 706, meaning "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioners, it would be senseless to vacate and remand for reconsideration," *PDK Labs. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). Here, USCIS undertook *more* comment periods for a *longer* period of time than the APA requires (three periods of 60, 30, and 30 days respectively). *See* 5 U.S.C. § 553 (indicating no minimum time required for the "opportunity to participate in the rule making" through comments and requiring only 30 days between publication and the effective date). The agency responded to the thousands of comments it received, including Plaintiff's, and made changes to the proposed revisions as a result. To invalidate the 2019 Form revisions because USCIS published three notices in the Federal Register instead of a proposed rule and a final rule would be to elevate form over function. Because Plaintiff has not argued or alleged any facts to show any procedural error affected the agency's outcome or prejudiced NWIRP, any such error was harmless, and Defendants are entitled to summary judgment and does not provide grounds for vacatur.

## 1. *The Form Revisions Do Not Constitute A "Legislative Rule" Under The APA.*

"[I]nterpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" are explicitly exempt from the APA's notice-and-comment requirement. 5 U.S.C. § 553(b)(3)(A). Because USCIS's actions fall under this exemption, notice-and-comment rulemaking was not required—although the agency gave the public ample notice and opportunity to comment, which opportunity the public (and Plaintiff) took, and to which comments the agency responded. *See* AR1139, 2793–97, 2935–41, 3302–12, 5942–44 (NWIRP and its former staff's submissions).

1. In the APA's terms, the Form revisions are best understood as "procedural rules." Such rules are exempt from the APA's notice and comment requirements. *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014). To determine whether a rule is procedural, courts consider "whether the agency action . . . encodes a substantial value judgment." *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 640 (D.C. Cir. 2002). This standard differs from the inquiry formerly employed to identify a procedural rule—"whether a given procedure has a 'substantial impact on parties'"— because "even unambiguously procedural measures affect parties to some degree." *Id.* The concept of a "value judgment" is construed narrowly and does not encompass "judgment[s] about what mechanics and processes are most efficient." *JEM Broad. Co. v. FCC*, 22 F.3d 320, 328 (D.C. Cir. 1994). Thus, the procedural exception applies even to rules that "may alter the manner in which the parties present themselves or their viewpoints to the agency" or have an "especially burdensome" impact on parties before the agency. *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280–81 (D.C. Cir. 2000). "The critical feature of a procedural rule is that it covers agency actions that do not themselves alter the rights or interests of parties." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quotation marks omitted).

The 2019 Form revisions are procedural, and notice and comment were not required to effect them. When USCIS first created the I-912, it did so pursuant to the same procedure used here: an "information collection request for review and clearance in accordance with the Paperwork Reduction Act." 75 Fed. Reg. at 40,846; *see also* AR14. As USCIS stated then, it aimed to "standardize" the "fee waiver process," and issued the "new form [I-912] to facilitate the fee waiver process" by "clearly outlin[ing] the requirements and documentation necessary to support a request for a fee waiver." AR14. Similarly, the revised Form "clearly outline[s] the requirements and documentation necessary to support a request for a fee waiver," *id.*: the revised

Form articulates "new guidance on the documentation acceptable for individuals to present to demonstrate that they are unable to pay a fee when requesting a fee waiver," AR180; *see also* 84 Fed. Reg. at 26,138 ("USCIS is removing the means-tested benefit as a criterion in its fee waiver request determinations, requiring the submission of Form I–912 to request a fee waiver, and clarifying what [evidence] will be considered for a fee waiver.").  In articulating new guidance about both acceptable evidence to demonstrate "inability to pay" under 8 C.F.R. § 103.7(c)(2)–(3) and the form the written request must take, the revised Form simply effectuates technical changes to fee waiver applications, bringing it squarely within the D.C. Circuit's definition of a procedural rule.  *See Mendoza*, 754 F.3d at 1023 (quoting *Batterton v. Marshall*, 648 F.2d 694, 702 n.34 (D.C. Cir. 1980)) (noting that rules "primarily directed toward improving the efficient and effective operations of an agency" are generally procedural).

Crucially, the standard for granting fee waivers remains unchanged.  As before, a "[d]iscretionary waiver of . . . fees" may be granted only if "[t]he party requesting the benefit is unable to pay," and "[a] waiver based on inability to pay is consistent with the status or benefit sought."  8 C.F.R. § 103.7(c)(1).  The agency merely changed which evidence it will consider when applying that standard to improve efficiency and consistency: USCIS previously considered means-tested benefits as per se evidence of inability to pay; now it looks at actual income.  An action that does not "change the *substantive standards* by which [USCIS] evaluates [fee waiver requests] . . . fall[s] comfortably within the realm of the 'procedural.'"  *JEM Broad. Co.*, 22 F.3d at 327 (emphasis added); *see also Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1055 (D.C. Cir. 1987) (if "standard of review" is unchanged, "focus and timing of review are matters for agency discretion, . . . well within § 553's procedural exemption.").  Instead, the 2019 Form revisions effected a change in the "manner in which the parties present themselves . . . to the agency," *James*

*V. Hurson Assocs., Inc.*, 229 F.3d at 280, based on USCIS's reasoned "judgment[s] about what mechanics and processes are most efficient." *JEM Broad. Co.*, 22 F.3d at 328. Finding them procedural also accords with the exception's purpose "to ensure that agencies retain latitude in organizing their internal operations." *Batterton*, 648 F.2d at 707.

Courts have repeatedly found rules similar to the one at issue here to fall within the APA's procedural exception. In *James V. Hurson Associates*, for example, the USDA had changed the ways in which commercial food producers could seek approval of a proposed food label. 229 F.3d at 279. The agency had previously allowed producers to do so "by mailing its application, by personally visiting the [relevant office], or by hiring courier/expediter firms whose employees would meet with [agency] representatives during office hours," but the agency eliminated face-to-face appointments without following notice and comment rulemaking. *Id.* The D.C. Circuit held that the agency's decision to eliminate face-to-face review was "the very sort of procedural measure" that qualifies as an exception to the notice and comment requirements under this Circuit's precedents because the agency "did not alter the substantive criteria by which it would approve or deny proposed labels; it simply changed the procedures it would follow in applying those substantive standards." *Id.* at 281; *see also Pub. Citizen*, 276 F.3d at 640 (FOIA search cutoff policy was procedural); *JEM Broad Co.*, 22 F.3d at 327 (rule dismissing incomplete application without opportunity to amend was procedural); *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 105-12 (D.D.C. 2013) (dismissing claim alleging that notice and comment procedures were required where agency modified structure for charging fees associated with mandatory declassification review requests). Likewise, here, USCIS's decision to accept fee waiver requests on a standardized form, using standardized evidence, does not alter any substantive criteria applicable to such requests but simply changes the procedures applicants must follow to submit a

request.  And the revisions maintain applicants' ability to demonstrate inability to pay through evidence of financial hardship.

Plaintiff's allegations that there is an increased burden associated with the Form revisions do not make them substantive.  *See James V. Hurson Assocs.*, 229 F.3d at 281 ("[A]n otherwise-procedural rule does not become a substantive one, for notice-and-comment purposes, simply because it imposes a burden on regulated parties.").  And its reliance on *Electronic Privacy Information Center v. U.S. Department of Homeland Security* (*EPIC*), 653 F.3d 1 (D.C. Cir. 2011) (finding TSA's decision to screen passengers with advanced imaging technology instead of magnetometers was substantive because of substantial, far-reaching effect on passengers' liberty interests), is misplaced.  *EPIC* states that "a rule with a 'substantial impact' upon the persons subject to it is *not* necessarily a substantive rule."  653 F.3d at 5 (emphasis added).  The relevant inquiry is qualitative rather than quantitative, and the question is not simply whether a given procedure will have a substantial impact on affected parties.  Rather, the D.C. Circuit looks to whether the change is such a novel "way" of proceeding, and with such a commensurately different type of burden imposed, that the change is better characterized as substantive rather than procedural.  *EPIC*, 653 F.3d at 6.  That is far from the case here, where there are no new substantive burdens.  The regulatory standard for a fee waiver—"unable to pay"—remains unchanged.  What has changed is the elimination of one of the previously accepted procedural mechanisms to automatically demonstrate such an inability to pay.  A misunderstanding of that distinction drove the district court's decision to enjoin the revisions in *City of Seattle*, 3:19-cv-7151-MMC (N.D. Cal.); this Court should decline Plaintiff's invitation to repeat that misstep here.

Likewise, although Plaintiff has not adequately alleged that the Form revisions will cause any processing delays—and, indeed, the agency explained that increasing efficiency in processing

fee waiver requests partly motivated the changes—even the theoretical burden associated with such delay would not make the Rule substantive because it would not constitute a "substantive value judgment." *Pub. Citizen*, 276 F.3d at 641; *see also Am. Hosp. Ass'n*, 834 F.2d at 1055 ("So long as the standard of review remains unchanged, the focus and timing of review are matters for agency discretion, falling well within § 553's procedural exemption."). Plaintiff and Amici's speculation about how the revisions might apply to unidentified third parties also "runs smack into the ripeness doctrine." *Nat'l Multi Hous. Council v. Jackson*, 539 F. Supp. 2d 425, 428 (D.D.C. 2008). With or without the 2019 Form revisions, fee waiver applicants will be assessed on their ability to pay, "consistent with the status or benefit sought" and the unaltered regulations. 8 C.F.R. § 103.7(c).[11]

2. Even if the revisions are not procedural, they are still exempt from notice-and-comment rulemaking because they do not constitute substantive rules but are, at most, "interpretive." Interpretive rules are "issued by an agency to advise the public of the agency's construction of the statutes and the rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995). "[A]s a general rule, an agency can declare its understanding of what a statute requires

---

[11] Under the USCIS fee regulation, discretion in the fee waiver process is explicitly and wholly vested in the *agency* in its adjudication of fee waiver requests; not only does the regulation make no reference to vesting any discretion in the *applicant*, but it imposes specific requirements for requests. *Compare* 8 C.F.R. § 103.7(c)(1) (imposing only two limits on USCIS's "[d]*iscretionary* waiver of fees" (emphasis added)), *with id.* § 103.7(c)(2) ("To request a fee waiver, a person requesting an immigration benefit *must* submit a written request for permission to have their request processed without payment of a fee with their benefit request. The request *must* state . . . the reasons for his or her inability to pay, and evidence to support the reasons indicated." (emphasis added)). While § 103.7(c)(2) is silent as to the form of the "written request" and supporting "evidence," that does not mean that the agency is obligated to accept all forms of "written request." Nor does developing or requiring the use of Form I-912 (as the agency has done for years) somehow contradict the regulation. On the contrary, because the regulation makes plain that the agency's authority to waive fees is discretionary, and because the regulation does not inhibit the agency's ability to determine what form "written request[s]" may take, the Form revisions are wholly consistent with its language and purpose.

without providing notice and comment . . . ." *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991). "A statement seeking to interpret a statutory or regulatory term is, therefore, the quintessential example of an interpretive rule." *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993). And such "an interpretive statement may 'suppl[y] crisper and more detailed lines than the authority being interpreted' without losing its exemption from notice and comment requirements under § 553." *Id.* (quoting *Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir. 1993)). The D.C. Circuit has considered four factors in determining whether a rule is legislative or interpretive:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, [and] (4) whether the rule effectively amends a prior legislative rule.

*Am. Mining Cong.*, 995 F.2d at 1112. An affirmative answer to any of these factors can render a rule legislative. *See id.*

None of these conditions applies here, where USCIS merely interpreted the terms "unable to pay," "written request," and "evidence" given that the regulation does not define them. 8 C.F.R. § 103.7(c)(2). First, that regulation provides an adequate "legislative" basis for fee waiver decisions by setting forth the applicable standard and basic procedure. Second, the agency did not publish the 2019 Form revisions in the Code of Federal Regulations. Third, USCIS did not invoke its general legislative authority when revising Form I-912. Rather, USCIS invoked *existing* statutory and regulatory authority to assess and waive fees. *See* AR180 (regulatory authority); AR250 (statutory and regulatory authority); 84 Fed. Reg. at 26,139 (noting lack of changes to existing standards for fees and fee waivers). Fourth, the revisions do not amend a prior legislative rule; they leave the regulatory *standard* for considering discretionary fee waivers unchanged.

31

Indeed, the 2010 creation of the Form I-912 was itself an interpretive rule and was issued pursuant to the PRA.[12]  The 2019 Form revisions are no less—indeed, are even more clearly—interpretive. They simply "describe[] the agency's view of the meaning of ["unable to pay," "written request," and "evidence" in] an existing . . . regulation." *Mendoza*, 754 F.3d at 1021 (finding such a rule interpretive).

*American Postal Workers Union v. United States Postal Service*, 707 F.2d 548, 558–60 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984) is instructive.  There, the D.C. Circuit held that the Office of Personnel Management's change in method for computing annuities (*i.e.*, its interpretation of the term "average annual basic salary") was not subject to § 553 rulemaking requirements, in part, because both the old and new methods were interpretive rules.  *Id.* at 560. The court relied on the agency's lack of intent to implement a legislative rule and the fact that the rule did not "'fill the gaps' in a complicated regulatory scheme" to conclude the new rule was interpretive.  *Id.* at 559.  And the court did so over the plaintiffs' argument that the new rule's "conclusive[] [e]ffects [on] the retirement rights of thousands" of federal employees rendered it legislative.  *Id.* at 559–60.  Indeed, the interpretive change "substantially reduced the expected annuities of some 113,000 future retirees."  *Id.* at 549.  Here, the revisions revised an, at most, interpretive rule, were not intended as a legislative rule, and do not "fill the gaps" in a complicated regulatory scheme.  They are therefore, at most, interpretive.

The 2019 Form revisions were not "based on something" other than the regulatory phrase—"unable to pay," 8 C.F.R. § 103.7(c)—that the agency sought to interpret.  *See* NWIRP

---

[12] *See, e.g.*, 75 Fed. Reg. at 40,846 (providing notice that USCIS would be submitting an "information collection request for review and clearance in accordance with the Paperwork Reduction Act of 1995" for new Form I-912); AR14 (explaining that 8 CFR §103.7(c) governs "the fee waiver process" and that then-new Form I-912 "outline[s] the requirements and documentation necessary to support a [fee waiver] request").

Mot. 24–25.  And USCIS explained that "the various income levels used in States to grant a means-tested benefit result in inconsistent income levels being used to determine eligibility for a fee waiver" (*i.e.*, the previously permitted form of proof resulted in inconsistent determinations of inability to pay).  AR332.  Thus, USCIS *did* draw a connection between the fee-waiver criteria and applicants' inability to pay, and Plaintiff's reliance on *National Family Planning and Reproductive Health Association v. Sullivan*, 979 F.2d 227, 238 (D.C. Cir. 1992) (finding that agency's explicit reliance *during litigation* on "a previously unacknowledged concern," rather than "an interpretation of the regulation's terms," weighed against agency's argument that it was merely interpreting the regulation) is misplaced.  The regulation does not indicate how to distinguish fee waiver applicants based on inability to pay, and the agency revised and clarified how to communicate "the reasons for . . . inability to pay, and evidence to support the reasons indicated" to the agency.  8 C.F.R. § 103.7(c).  Applicants may still submit hardship-based fee waiver requests.  Plaintiff may prefer applicants be permitted to use yet a different method (or perhaps even to use any method imaginable by an applicant), but the regulation leaves the discretion to define that method with the agency, not the applicant.

For all of these reasons, the Form revisions cannot be considered either a substantive or legislative rule and are exempt from notice-and-comment rulemaking.

### 2.  *The Form Revision Is Governed By The Paperwork Reduction Act, With Which The Agency Complied.*

The applicability of the PRA is clear.  The PRA was enacted to reduce the burden of paperwork requests on the public, 44 U.S.C. § 3501(1), and governs "collection[s] of information," defined as "the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format."  *Id.* § 3502(3)(A).  Form I-912 meets this definition, as made clear in the notice

proposing the Form's creation.  75 Fed. Reg. at 40,846.

The PRA imposes procedural requirements for information-collection devices distinct from the APA's rulemaking requirements.  For a proposed information-collection, the PRA requires two notice-and-comment periods.  44 U.S.C. §§ 3506, 3507.  First, the agency must publish a Federal Register notice and allow 60 days for comment.  *Id.* § 3506(c)(2)(A).  After considering the comments, the agency submits its information-collection request to the OMB Director for review.  *Id.* § 3507(c)(3).  OMB, with certain exceptions, then reviews the proposed collection concurrent with an additional 30-day comment period, and, if warranted, approves the proposed information collection for a period up to three years.  *Id.* §§ 3507, 3508.

USCIS complied with the PRA, and Plaintiff's arguments to the contrary, in addition to lacking a private right of action as discussed above, *see supra* Part I.D, prove meritless.  Plaintiff tellingly cites no precedent to support its assertions under the Act and its implementing regulations. This is unsurprising, given the lack of a private right of action.  Even if this Court had jurisdiction over this claim, though, USCIS more than satisfied the Act's requirements.  USCIS satisfied the publication and comment requirements in revising the Form I-912.  *See, e.g.*, AR179 (publication of proposed revision to Form I-912 and invitation to comment on proposed revisions during 60-day period); *see also* 83 Fed. Reg. 49,120.  The agency then evaluated the comments received and created a "supporting statement" justifying the new burden and the legal rationale for the new questions to be asked using the elements outlined in 44 U.S.C. § 3506(c).  AR450–60.  USCIS responded to the public comments in the supporting statement and submitted the proposed revisions to OMB "for review and clearance in accordance with the [PRA]," along with an additional period for public comment.  84 Fed. Reg. at 13,687, 26,138.  Although it was not required to, on June 5, 2019, USCIS published yet a third notice in the Federal Register to invite

additional public comments for a third period of 30 days.  84 Fed. Reg. 26,137.  OIRA approved

the changes to Form I-912 on October 24, 2019 and assigned it a control number which was clearly

displayed on the form and instructions.  AR461–63.  USCIS's revisions to the Form complied with

the PRA.

### B.  The Revised Form Is Not Arbitrary And Capricious.

Even if the Court were to find that the Form revisions fall under the APA, Plaintiff's claim

that the revisions are arbitrary and capricious is meritless and their motion for summary judgment

should be denied.

The APA does not permit the Court to set aside the Form revisions simply because Plaintiff

would have preferred a different outcome.  Rather, this Court may invalidate the revisions only if

it concludes that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with the law." 5 U.S.C. § 706(2)(A).  Agency action is not arbitrary and capricious

unless the agency has "relied on factors which Congress had not intended it to consider, entirely

failed to consider an important aspect of the problem, offered an explanation for its decision that

runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to

a difference in view or the product of agency expertise."  *Nat'l Ass'n of Home Builders v. Defs. of*

*Wildlife* (*NAHB*), 551 U.S. 644, 658 (2007).  A court's review is "narrow," however, limited to

determining whether the agency "examine[d] the relevant data and articulate[d] a satisfactory

explanation for its action including a rational connection between the facts found and the choice

made."  *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *Motor Vehicle Mfrs.*

*Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)).  The Court "is not to substitute its judgment for that

of the agency," and ultimately, the question before the Court is whether the agency's decision "was

the product of reasoned decisionmaking." *State Farm*, 463 U.S. at 43, 52.

Indeed courts "'presume the validity' of the agency's action," which a plaintiff "can overcome only by demonstrating that the [action] constitutes a 'clear error of judgment.'" *Grid Radio v. FCC*, 278 F.3d 1314, 1322 (D.C. Cir. 2002) (citations omitted). The standard "usually boils down to the question of whether the agency action at issue was 'reasonable and reasonably explained.'" *Stovic v. R.R. Ret. Bd.*, 826 F.3d 500, 506 (D.C. Cir. 2016) (quoting *Cmtys. for a Better Env't v. EPA*, 748 F.3d 333, 335 (D.C. Cir. 2014)). Notably, where an agency "is expressly delegated the authority to grant [an] exemption and is required to make certain other determinations in order to do so . . . those determinations . . . are . . . entitled to great deference under the 'arbitrary and capricious standard.'" *AFL-CIO v. Donovan*, 757 F.2d 330, 343 (D.C. Cir. 1985). In other words, Plaintiff's burden is substantial.

Moreover, as relevant here, "there is no requirement that [an] agency's change in policy clear any 'heightened standard.'" *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1094 (D.C. Cir. 2015) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514 (2009)). Instead, as with any other agency action, the question is simply whether the change in policy "rest[s] on a 'reasoned explanation.'" *Id.* (quoting *Fox*, 556 U.S. at 515). That explanation ordinarily should "display awareness that [the agency] *is* changing position," but "the APA imposes no special burden when an agency elects to change course." *Id.* at 1094-95.

Plaintiff asserts three classes of arguments that the Form revisions are "arbitrary [and] capricious" under 5 U.S.C. § 706(2)(A): (1) that USCIS provided shifting or inadequate justifications; (2) that USCIS ignored important factors while crediting inappropriate ones; and (3) that USCIS overlooked certain alternatives. NWIRP Mot. 26–38. None proves availing, though, because USCIS's challenged actions satisfy arbitrary and capricious review's low bar.

First, Plaintiff argues "USCIS relied on shifting, illogical, and unsupported justifications."

*Id.* at 27–32.  Notwithstanding Plaintiff's attempts to muddy the record, the fact remains that USCIS stated two primary reasons for the Form revisions:  (1) absent the revisions, USCIS would "continue to forgo increasing amounts of revenue as more fees are waived" which would in turn require the agency "to increase the fees that it charges for benefit requests for which fees are not waived," AR331; and (2) "USCIS has found that the various income levels used in states to grant a means-tested benefit result in inconsistent income levels being used to determine eligibility for a fee waiver," and the agency was seeking "to introduce more consistent criteria for approving all fee waivers," AR332.  USCIS also elaborated on each reason.  As to the first, as USCIS reported in the June 5, 2019 notice, "the estimated annual forgone revenue from fee waivers and exemptions has increased markedly," and the revisions are intended "to curtail[] the rising costs of fee waivers."  *Id.*  And as to the second, USCIS explained that accepting receipt of a means-tested benefit as per se evidence of inability to pay yielded a situation in which "a fee waiver may be granted for one person who has a certain level of income in one state, but denied for a person with that same income who lives in another state."  *Id.*[13]

> USCIS also justified requiring tax transcripts for income-based fee waiver requests:
>
> USCIS cannot accept incomplete copies of tax returns or copies that are not signed or submitted to the IRS to support fee waiver requests, because such a lax standard would encourage fraud in the fee waiver process.  Therefore, USCIS believes that requiring transcripts will reduce the number of fee waiver request rejections.

---

[13] Plaintiff does not dispute USCIS's finding that relying on proof of receipt of a means-tested benefit resulted in inconsistent outcomes across the Nation.  And its quarrel with USCIS's choice between (perhaps imperfect) options is not sufficient to overcome the deference due to USCIS's decision.  Further, Plaintiffs offer no reason why the United States, when determining eligibility for a discretionary federal benefit, should have to rely on programs administered by and at the discretion of the fifty States.  Finally, reliance on an income threshold tied to the FPG in determining benefit eligibility is eminently reasonable; in fact, that is a primary purpose of the FPG.  *See, e.g.*, Annual Updates of the HHS Poverty Guidelines, 84 Fed. Reg. 1167-02, 1168 (Feb. 1, 2019) (explaining that the FPG are "a simplified version of the poverty thresholds that the Census Bureau uses to prepare its estimates of the number of individuals and families in poverty" and "are used as an eligibility criterion by Medicaid and a number of other Federal programs").

> USCIS believes the change will reduce the number of fee waiver requests that are rejected because of improper documentation . . . .

AR321; *see also* AR403.  And it explained why requiring fee waiver requests be submitted on a standardized Form would reduce the agency's burden processing requests by promoting uniformity.  AR242–49, 452.

These explanations are "reasonable and reasonably explained."  *Stovic*, 826 F.3d at 506 (quoting *Cmtys. for a Better Env't*, 748 F.3d at 335), and allow "the agency's path [to] reasonably be discerned," *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004).  That judgment is entitled to deference "especially . . . when the agency is called upon to weigh the costs and benefits of alternative policies."  *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 303 (D.C. Cir. 2003) (quotations and citations omitted).  Such explanations also overcome Amici's assertions that the revisions have no discernable benefit or contradict their stated purpose.  Amici Curiae Br. 16–18.  At bottom, Plaintiff fails to identify a sufficient basis to overcome the deference owed the agency's choice among types of evidence it could accept from applicants seeking to demonstrate inability to pay.

Plaintiff also argues that USCIS did not "explain" why the 150% of the FPG income threshold and hardship standard "suffice as stand-ins for an individual's inability to pay USCIS fees."  NWIRP Mot. 31.  However, any challenge to the reasonableness of using that threshold for demonstrating inability to pay is time-barred.  Where, as here, no other statute provides a limitations period, a plaintiff has six years to bring a civil action against the United States.  28 U.S.C. § 2401.  The 150% of FPG income threshold has been in place since at least November 2010, when the Form I-912 first took effect.  *See* AR32–42.  To the extent Plaintiff challenges USCIS's *exclusive* reliance on this threshold for income-based fee waivers rather than providing fee waiver applicants with the *choice* of demonstrating receipt of a means-tested benefit *or*

demonstrating income at or below 150% of the FPG, Plaintiff's challenge collapses into its argument that eliminating receipt of a means-tested benefit as per se evidence of inability to pay is arbitrary and capricious, which fails for the reasons explained above.

Plaintiff further challenges as unexplained USCIS's decision to require each individual request a fee waiver, rather than grouping requests from members of the same family. *E.g.*, NWIRP Mot. 32; *see also* Amici Curiae Br. 19–20. USCIS received public comments that requiring each person to submit a form would be burdensome and unnecessary. The agency acknowledged that such a requirement would increase the burden for households with several members requesting fee waivers at the same time, but cited USCIS data that over 90 percent of Form I-912 filings were for one person. AR247, 317, 400. Thus, the actual impact of this change will be limited. USCIS further explained that the change was intended to reduce the number of fee waiver requests that are rejected because of improper documentation, inadequate information, and missing signatures from household members. *Id.* The agency's judgment that these benefits outweigh the small added burden was therefore both well-explained and well within its discretion.

Second, Plaintiff argues "USCIS ignored important factors, while crediting inappropriate ones." NWIRP Mot. 32–37. Plaintiff focuses on three factors: individual applicants' financial circumstances, the proposed changes' alleged harms, and the "changing regulatory environment," including the November 2019 NPRM. The record, however, demonstrates the agency did consider these factors; it merely weighed them differently from how Plaintiff would have preferred.

The agency's focus on individual applicants' financial circumstances necessarily follows from its consideration of and finding that accepting proof of receipt of means-tested benefit was resulting in inconsistent determinations on fee waiver requests from individuals with the same income. Moreover, deciding to use 150% of the FPG as the measure for inability to pay also

reflects consideration of applicants' financial circumstances, as discussed above.  USCIS did not change the applicable regulation or standard for reviewing fee waiver requests:  inability to pay.

Plaintiff's assertion that the agency neglected to "grappl[e] with" comments alleging harms that would flow from the proposed changes is simply false.  NWIRP Mot. 33–34.  An agency "need not address every comment, but it must respond in a reasoned manner to those that raise significant problems."  *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003).  Here, the record demonstrates that USCIS considered and thoroughly responded to the significant objections raised in comments to the proposed Form revisions.  Those explanations are entitled to special deference.  *See Consumer Elecs. Ass'n*, 347 F.3d at 303.  Moreover, just because a party predicts a policy will prove more burdensome does not make it arbitrary and capricious; indeed, the speculative nature of such an argument "runs smack into the ripeness doctrine."  *Nat'l Multi Hous. Council*, 539 F. Supp. 2d at 428.  USCIS considered the small increase in burden and, in its discretion, found the Form revisions' benefits outweighed the predicted costs.  *E.g.*, AR246.

Lastly, Plaintiff's claim that the agency ignored the "changing regulatory environment" as an important factor, including the November 2019 NPRM, NWIRP Mot. 35–36; *see supra* Note 4, is misleading for two reasons.  First, because the agency's consideration of the challenged Form revisions was complete when it submitted to OMB in June 2019, it was not required to consider a possible future rulemaking's impact—especially one that would not be published for public comment for over five months—before that submission.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973).  And second, the NPRM set forth proposals for comprehensive reforms to various aspects of applications and immigration benefits administered by USCIS, none of which is certain to occur, and of which fee waiver requests are one small part.  USCIS was losing hundreds of millions of dollars each year to fee waivers and it decided not to wait for a more comprehensive fee rulemaking

while it continued to "forgo increasing amounts of revenue as more fees are waived."  84 Fed.

Reg. 26,138; AR330.  The agency need not have revealed and grappled with the possibility of a

future rulemaking as part of its lawful Form revisions.

Plaintiff also objects to USCIS considering the volume of fees waived, arguing it is

irrelevant to interpreting the phrase "unable to pay."  NWIRP Mot. 36.  But the authorizing statute

and regulation make recouping the *agency's* expenses the key factor in determining whether and

how to grant discretionary fee waivers.  USCIS was therefore entitled to give that factor particular

weight.[14]  Indeed, it would have been irresponsible for the agency, which relies on fees collected,

*not* to consider the growing waivers' impacts on its ability to provide services to applicants.  Even

if the Court doubts that USCIS's conclusions necessarily follow from the facts found, the Court

"should 'uphold a decision of less than ideal clarity if the agency's path may reasonably be

discerned.'"  *Fox*, 556 U.S. at 513–14 (2009) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight*

*Sys., Inc.*, 419 U.S. 281, 286 (1974)).  Because USCIS's "decision was based on a consideration

of the relevant factors and the record reflects no "clear error of judgment," the Court should find

the Form revisions lawful.  *Ctr. for Auto Safety v. Peck*, 751 F.2d 1336, 1342 (D.C. Cir. 1985).[15]

---

[14] Plaintiff's argument that the agency was also not permitted to consider "the strong desire of commenters for [USCIS] to retain the means tested benefit policy" as evidence that "means tested benefits are too easy to obtain for them to be good indicators of true inability to pay a USCIS fee," NWIRP Mot. 37, is misguided.  The usefulness to the agency of a type of evidence (receipt of means-tested benefits) in demonstrating "true inability to pay" is precisely the type of consideration the fee waiver statute and regulations consign to the agency's discretion.  Nothing about the agency's actions "conflict[ed] with Congress's instruction that agencies should seek and use public input." *Id.*  On the contrary, USCIS did just that more times than was required by the PRA APA.  *See supra* Part II.A.2.

[15] Amici (but not Plaintiff) similarly argue the agency "ignore[d] geographic disparities in cost of living" when it eliminated use of means-tested benefits evidence as per se evidence of inability to pay.  *See* Amici Curiae Br. 13–14.  First, any argument presented by Amici that Plaintiff did not submit is not properly before the Court.  But more importantly, as explained above, USCIS's decision to rely on the FPG was reasonable and necessarily considered geographic disparities.  *See*

Third, Plaintiff argues that "USCIS failed to consider significant, viable, and obvious alternatives." NWIRP Mot. 37–38. Plaintiff now posits alternatives it wishes USCIS had more explicitly considered but tellingly provides no evidence that public commenters put these alternatives to the agency. *See id.*; *see also Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) ("It is black-letter administrative law that '[a]bsent special circumstances, a party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue.'" (quoting *Tex Tin Corp. v. EPA*, 935 F.2d 1321, 1323 (D.C. Cir. 1991) (alterations in original)). Indeed, NWIRP itself neglected to raise these "obvious" alternatives, NWIRP Mot. 37, in its own comments to the agency. *See* AR1139, 2793–97, 2935–41, 3302–12, 5942–44 (NWIRP and its former staff's submissions).

Plaintiff's arguments based on alternatives missing from the public comments are waived. *See Appalachian Power Co.*, 251 F.3d at 1036. Moreover, the administrative record belies Plaintiff's arguments as to many alternatives. On the contrary, USCIS engaged in a process that considered alternative proposals and explained its rationale for rejecting or accepting the different options based on the evidence before it.

For example, the Form revisions do allow individuals to submit income documentation other than tax transcripts in support of a request based on financial hardship, where the adjudicator looks at the totality of circumstances. AR326. Others of Plaintiff's newly minted alternatives plainly would prove counterproductive to the agency's (and Plaintiff's own) interests. "[U]sing requests-for-evidence to address deficiencies in specific applications," NWIRP Mot. 37, would

---

*supra* Note 13. Any argument that an approach the agency considered and reasonably rejected makes more sense than the one it eventually chose does not overcome the deference owed to agencies' weighing of and choices between alternate policies. *Consumer Elecs. Ass'n,* 347 F.3d at 303; *see also Ctr. for Auto Safety*, 751 F.2d at 1342.

increase the agency's workload and require an attendant increase in fees to cover those costs. Additionally, since there is no appealing a fee waiver denial, deficient fee waiver requests are already returned with an explanation and without prejudice for resubmission.   Plaintiff's alternatives requiring research and monitoring of the myriad means-tested benefit programs across the Nation would increase agency costs and, ultimately, fees for paying applicants.   The agency is not required to consider every alternative imaginable, including ones raised for the first time in litigation; all that is required is that the agency consider the important issues and provide a rational explanation for its decision.   *State Farm*, 463 U.S. at 43.   That happened here.

At bottom, Plaintiff and USCIS clearly have "a difference in view" about the manner in which applicants for fee waivers should be permitted to demonstrate inability to pay.   *NAHB*, 551 U.S. at 658.   That disagreement, however, does not satisfy the Plaintiff's burden to demonstrate that the agency's conclusions were "contrary to the evidence before it," *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 803 (D.C. Cir. 1984), or a "clear error of judgment," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).   Accordingly, Defendant is entitled to summary judgment and Plaintiff's motion for summary judgment should be denied.

## III.     The Court Should Not Grant a Nationwide Injunction.

Were the Court to order an injunction here, it should be limited to redressing only any established injuries to Plaintiff.   *See Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."); *see generally Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay) (detailing the costs of injunctions that "direct how the defendant must act toward persons who are not parties to the case").   Equitable principles require that an

injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Nationwide injunctions, however, often afford relief not only to persons who are not parties to a case, but even to those who would not have had standing to seek an injunction in the first place. They also short-circuit the dialogue among lower courts, whose decisions ordinarily do not bind one another pending review by the Supreme Court, as this litigation over the 2019 Form revisions itself highlights. Nationwide injunctions also undermine other legal rules and mechanisms (*e.g.*, class actions and the principle that legal issues involving the federal government should be subject to re-litigation in different circuits). Indeed, the presence of a nationwide injunction in this matter reinforces these very harms. *See* Part I.A.1, *supra*.

Additionally, vacating the 2019 Form revisions in their entirety would be inappropriate. Although § 706 provides that an unlawful agency action be "set aside," it does *not* provide that such action be set aside facially, as opposed to solely with respect to those applications that actually injure plaintiff. Accordingly, § 706 is not properly construed to displace the general rule that equitable remedies—including vacatur of agency rules under the APA, *see* 5 U.S.C. § 703—may go no further than necessary to redress plaintiff's own injury. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[W]e do not lightly assume that Congress has intended to depart from established [equitable] principles."). So, to the extent that any part of the 2019 Form revisions is found lawful (*e.g.*, if the requirement to use Form I-912 for fee waiver requests or to submit one Form per person requesting a waiver is neither substantive nor arbitrary and capricious), it would be inappropriate to enjoin or set aside that part.

In other words, even if the Court finds any part of the 2019 Form revisions unlawful, it should limit any relief to redressing only any injury in fact established by this Plaintiff. Given the

nationwide injunction, the procedural posture of the other challenges, and the November 2019

NPRM, the relief Plaintiff seeks must come in the form of either an advisory opinion or duplicate

nationwide injunction.   This Court should countenance neither.   Instead, the Government

respectfully suggests that remand to the agency, which is already effectively underway, constitutes

the greatest extent of relief this Court should afford Plaintiff to the extent it prevails.

## CONCLUSION

For reasons stated, the Court should dismiss this case for Plaintiff's lack of standing.  It should

also dismiss Plaintiff's claims against the Policy Manual revisions for lack of final agency action and

under the PRA because that statute lacks a right of action.   In the alternative, the Court should deny

Plaintiff's motion for summary judgment and grant Defendant's cross-motion for summary judgment.

Dated:  February 18, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

 */s/ Charles E.T. Roberts*
CHARLES E.T. ROBERTS
PA Bar No. 326539
JULIE STRAUS HARRIS
DC Bar No. 1021298
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 305-8628
Fax: (202) 616-8470
Email: charles.e.roberts@usdoj.gov

*Attorneys for Defendant*