**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NORTHWEST IMMIGRANT )
RIGHTS PROJECT, AYUDA, )
INC., and CASA DE MARYLAND, INC., )
)
)
Plaintiffs, )
)
v. )
)
UNITED STATES CITIZENSHIP )
AND IMMIGRATION SERVICES, )
DEPARTMENT OF HOMELAND )
SECURITY, CHAD F. WOLF, in his )      Case No. 19-cv-03283-RDM
official capacity as Acting Secretary of )
Homeland Security, and KENNETH T. )
CUCCINELLI, in his official capacity )
as Senior Official Performing the Duties of )
the USCIS Director and Senior Official )
Performing the Duties of the Deputy )
Secretary of Homeland Security, )
)
Defendants. )
)

**BRIEF FOR 23 LOCAL GOVERNMENTS AND ELECTED OFFICIALS AS AMICI
CURIAE IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION MOTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT......................................... 1

ARGUMENT ........................................................................................................................... 2

    I.   Exorbitantly raising fees—while eliminating fee waivers and reductions for most
        applicants—will significantly decrease access to citizenship................................. 2

    II.  The rule will impair economic mobility and community engagement for immigrants
        eligible to naturalize................................................................................................ 4

    III. By restricting access to citizenship, the final rule will not only impair municipalities'
        communities, but also shrink their revenue streams  in the midst of fiscal crisis.............. 7

CONCLUSION....................................................................................................................... 10

LIST OF ADDITIONAL COUNSEL....................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Foley v. Connelie*,
    435 U.S. 291 (1978)........................................................................................................6

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..........................................................................................................4

**Other Authorities**

8 C.F.R. § 103.7(b)(1)(BBB)(1), (c)(3)(xiii) (2012)....................................................3

85 Fed. Reg. 46791 (Aug. 3, 2020)...............................................................................3

Abdel Jimenez, *Illinois unemployment rate hit 16.4% in April, a 44-year high, as
    coronavirus-related job losses multiplied*, CHICAGO TRIBUNE (May 21, 2020) ,
    https://tinyurl.com/yy7sp4tz. ......................................................................................6

Ana Gonzalez-Barrera, *Mexican Lawful Immigrants Among the Least Likely to
    Become U.S. Citizens*, PEW RESEARCH CENTER (June 29, 2017),
    https://perma.cc/87AF-RQB3 ......................................................................................2

City of Boston, Comment Letter on Proposed Rule to Increase U.S. Citizenship
    and Immigration Services Fees (Dec. 30, 2019), *available at*
    https://perma.cc/XLT6-4ZAN ....................................................................................8

Brian J. McCabe, *Are Homeowners Better Citizens? Homeownership and
    Community Participation in the United States (2013),* https://perma.cc/X22S-
    BUFD .........................................................................................................................6

Department of Homeland Security, Annual Report 2018 (June 28, 2018),
    https://perma.cc/86T2-5GV6 ....................................................................................3

H.R. Rep. 115-948 (2019)..........................................................................................6, 8

New York State Department of Labor, *NYS Economy Added 244,200 Private
    Sector Jobs in July 2020*, https://perma.cc/P6H9-MEM8; ......................................6

MADELEINE SUMPTION & SARAH FLAMM, THE ECONOMIC VALUE OF CITIZENSHIP
    FOR IMMIGRANTS IN THE UNITED STATES  (2012), https://perma.cc/7CDN-
    LGN7 .....................................................................................................................4, 5

MANUEL PASTOR, ET AL., BREAKING THE BARRIERS: THE PROMISE OF CITIZENSHIP
IN LOS ANGELES COUNTY (2016), https://perma.cc/7HED-F6C6 ..........................................3, 4

MARIA E. ENCHAUTEGUI & LINDA GIANNARELLI, THE ECONOMIC IMPACT OF
NATURALIZATION ON IMMIGRANTS AND CITIES (2015),
https://perma.cc/W5SP-H2T2 ..................................................................................................2

New York City Mayor's Office of Immigrant Affairs, Fact Sheet: Eligible to
Naturalize New Yorkers (Dec. 2019), https://perma.cc/7ETC-ZTCF .....................................3

New York City Mayor's Office of Immigrant Affairs, *State
of Our Immigrant City* (2019), https://perma.cc/2ZUT-ERNK .................................................5

New York, Comment Letter on Proposed Rule to Increase U.S. Citizenship and
Immigration Services Fees (Dec. 30, 2019), *available at*
https://perma.cc/W9LV-ZN5G ..................................................................................................9

OneNYC 2050, A Vibrant Democracy,
*available at* https://perma.cc/J6PH-5PSR..................................................................................9

Oren M. Levin-Waldman, *Income Inequality and Disparities in Civic
Participation in the New York City Metro Area* (2012),
https://perma.cc/9LVP-ZTP2;....................................................................................................6

Serena Marshall, *Madeleine Albright Welcomes New Citizens, Says America
Needs Vitality They Bring* (May 24, 2012) ABC NEWS,
https://perma.cc/CN55-85E3 .....................................................................................................1

## STATEMENT OF INTEREST
## AND SUMMARY OF ARGUMENT

This case is not about who should be eligible for citizenship, but about whether the federal government can arbitrarily erect procedural obstacles on the path to citizenship for those who already satisfy the substantive criteria. Amici curiae—twenty-three cities, counties, and elected officials comprising both metropolises like New York City and smaller municipalities like Skokie, Illinois—have a powerful interest in ensuring that their foreign-born residents who are eligible to become citizens are provided with fair and reasonable access to the naturalization process. Nine million people nationwide—hundreds of thousands each in large cities like New York and Los Angeles—meet the criteria for obtaining citizenship.

The challenged rule of the Department of Homeland Security (DHS) will do lasting and irreparable harm not just to the millions of immigrants who are eligible to naturalize, but to the municipalities they call home. The challenged rule radically increases fees for naturalization applications, while at the same time sharply curtailing opportunities for low-income applicants to seek waiver or reduction of fees. The impact will be broadly felt: naturalization not only provides "a license to a dream," in the words of Former Secretary of State and naturalized citizen Madeleine Albright,[1] but also yields tangible economic benefits for naturalized individuals and for their communities. Immigrants who naturalize have higher earnings, higher employment rates, and higher homeownership rates than comparable non-citizens. And municipalities directly benefit from those gains through increased tax income, decreased public benefit expenditures, and more stable and engaged communities.

---

[1] Serena Marshall, *Madeleine Albright Welcomes New Citizens, Says America Needs Vitality They Bring* (May 24, 2012) ABC NEWS, https://perma.cc/CN55-85E3.

Anyone can see that the challenged rule is a deliberate attempt to limit access to citizenship, part of a larger nativist campaign by this federal administration. But setting intent to one side, the rule will, as a matter of simple economics, result in fewer naturalization applications and fewer citizens. Despite this, at no point during the rulemaking process did DHS meaningfully grapple with how these roadblocks will cause profound harm not just to immigrants, but to their broader communities. The rule is deeply flawed—procedurally and substantively—and this Court should enjoin its implementation.

## ARGUMENT

I.   **Exorbitantly raising fees—while eliminating fee waivers and reductions for most applicants—will significantly decrease access to citizenship.**

Already, cost is a barrier to citizenship for many immigrants. Nearly one-fifth of eligible immigrants who do not naturalize cite cost as the main reason.[2] This is a large number of people: while almost nine million immigrants in the United States meet the criteria for obtaining citizenship, only about 700,000 naturalize each year.[3] The number of eligible individuals whose naturalization is blocked by costs will skyrocket if the DHS rule nearly doubling the application fee (from $640 to $1,170) takes effect.

Compounding the impact, in addition to sharply increasing the fee, the challenged rule also eliminates the possibility of fee waivers and fee reductions for many eligible applicants. Currently, individuals whose income is less than 150% of the federal poverty level qualify for a full fee waiver and those whose income is between 150% and 200% of the federal poverty level qualify for a fee reduction. 8 C.F.R. § 103.7(b)(1)(BBB)(1), (c)(3)(xiii) (2012). These cost-

---

[2] Ana Gonzalez-Barrera, *Mexican Lawful Immigrants Among the Least Likely to Become U.S. Citizens*, PEW RESEARCH CENTER (June 29, 2017), https://perma.cc/87AF-RQB3.

[3] MARIA E. ENCHAUTEGUI & LINDA GIANNARELLI, THE ECONOMIC IMPACT OF NATURALIZATION ON IMMIGRANTS AND CITIES 1 (2015), https://perma.cc/W5SP-H2T2.

alleviating measures provide critical aid to low-income applicants. Even under the existing, more modest fee structure, a large portion of applicants rely on these measures to begin the naturalization process. In 2017, for instance, 40% of naturalization applicants requested a fee waiver nationwide, and many more qualified for the fee reduction.[4] But despite this documented reliance on fee waivers and reductions, the challenged rule deters naturalization and incentivizes non-citizens to remain so by imposing cost-prohibitive fees on naturalization, while *cutting* fees for maintaining lawful permanent resident status despite the rule's ostensible revenue-generating rationale. 85 Fed. Reg. 46791 (Aug. 3, 2020).

Raising naturalization application fees and eliminating fee waivers and reductions will chill naturalization rates across the country. In New York City alone, there are over 620,000 lawful permanent residents who are eligible to obtain citizenship, nearly half of whom currently qualify for a fee waiver or reduction.[5] Similarly, in Los Angeles County, the median income of the nearly 770,000 immigrants eligible to naturalize is under $29,000, meaning that the proposed application fee of $1,170 exceeds two weeks' gross pay for at least half of potential applicants.[6] And the application fee is just one of the many costs associated with the naturalization process— many immigrants must also pay for English and civics courses, as well as legal and other professional assistance. In light of available data, far more immigrant families eligible for citizenship will forgo their right to seek naturalization solely because of cost under the challenged DHS rule. By failing to account for the deterrent effect of increasing naturalization

---

[4]  Department of Homeland Security, Annual Report 2018, 27 (June 28, 2018), https://perma.cc/86T2-5GV6.

[5] New York City Mayor's Office of Immigrant Affairs, Fact Sheet: Eligible to Naturalize New Yorkers, 3 (Dec. 2019), https://perma.cc/7ETC-ZTCF.

[6] MANUEL PASTOR, ET AL., BREAKING THE BARRIERS: THE PROMISE OF CITIZENSHIP IN LOS ANGELES COUNTY 12 (2016), https://perma.cc/7HED-F6C6.

fees, DHS "failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## II.    The rule will impair economic mobility and community engagement for immigrants eligible to naturalize.

When immigrants eligible to naturalize are not curtailed in their ability to obtain citizenship, they have the opportunity to create stronger ties with their community through the right to vote, the ability to serve on a jury, and a deeper sense of belonging. What may be less obvious is that naturalization also provides immigrants with significant and empirically observable economic benefits. In particular, naturalized citizens see positive impacts in both income and rate of employment, in the ability to own a home, and in their resilience to economic downturns such as our current one. These benefits are at grave risk due to the challenged rule's imposition of cost-prohibitive fees, and the inevitable decline in naturalization that would follow if the rule were implemented.

***Harm to income and employment.*** The challenged rule will suppress gains in income and employment through naturalization. A recent study shows that naturalized citizens earn nearly 9%, or roughly $3,200, more annually than if they remained non-citizens. Naturalized citizens also see over a 2% increase in the employment rate after their access to employers broadens due to a change in status.[7] These profound differences between naturalized citizens and non-citizens prevail even when other characteristics, like occupation, industry, language ability, country of origin, and duration of U.S. residence, are held constant.[8] Incomes increase within just two years

---

[7] ENCHAUTEGUI & GIANNARELLI, *supra* note 3, at 2.

[8] *Id.* at 8; MADELEINE SUMPTION & SARAH FLAMM, THE ECONOMIC VALUE OF CITIZENSHIP FOR IMMIGRANTS IN THE UNITED STATES 12 (2012), https://perma.cc/7CDN-LGN7.

of obtaining citizenship, with accelerated earnings growth accruing in later years.[9] A significant portion of those eligible to naturalize, however, may be less likely to access these employment opportunities if they cannot naturalize because of the high cost.

**Harm to homeownership rates.** The challenged rule will also hold down yet another economic benefit: increased rates of homeownership. The significant increase in income resulting from naturalization is closely tied to greater rates of homeownership. Naturalized citizens are not only more likely to be able to afford down payments and mortgage payments, but they also are empowered by a greater sense of belonging and permanency to make long term plans. Thus, naturalized citizens see a more than 6% rise in their homeownership rate as compared with similarly situated non-citizens who are eligible to naturalize.[10] In cities, the jump can be even more dramatic: in Boston, those who naturalize are 33% more likely to own homes than comparable non-citizens, while in Seattle, rates for naturalized citizens are almost 20% higher than for non-citizens.[11] With decreased access to the naturalization process under the challenged rule, the homeownership rate of immigrants would likewise suffer.

**Greater risk from economic downturns.** The challenged rule would also impair the gains that the naturalization process yields for immigrants' economic resiliency. Overall, the poverty rate of naturalized citizens is 7% lower than that of lawful permanent residents.[12] And naturalized citizens are also better equipped to weather economic downturns than are non-citizens. Between 2006 and 2010, for instance, non-citizen incomes fell by nearly four times the

---

[9] SUMPTION & FLAMM, *supra* note 8, at 12.

[10] ENCHAUTEGUI & GIANNARELLI, *supra* note 3, at 3, 17.

[11] *Id*. at 20.

[12] New York City Mayor's Office of Immigrant Affairs, *State of Our Immigrant City*, 31 (2019), https://perma.cc/2ZUT-ERNK.

drop for naturalized citizens.[13] The greater stability provided by naturalization is especially significant now, as local economies recover from the unprecedented and sudden recession brought on by the COVID-19 pandemic. With the unemployment rate hovering around 20% in New York City and 16% in Chicago, increased resiliency would be a lifeline for many.[14]

As noted above, the benefits of obtaining citizenship go beyond increasing individual purchasing power and economic stability—citizenship contributes substantially to immigrants' ability to integrate and engage with their communities. Participation in civic organizations and volunteer activities dramatically increase as income and homeownership increase.[15] This country's historical recognition of these benefits is reflected in "Congress' determination to make it relatively easy for immigrants to become naturalized citizens." *Foley v. Connelie*, 435 U.S. 291, 294 n.2 (1978). And only last year, when explaining its appropriations bill, Congress reaffirmed its commitment to these values in explicitly noting that fee waivers are expected to continue for those unable to pay the naturalization fee. H.R. Rep. 115-948, at 61 (2019). But DHS ignored that observation, and the wealth of data that reflects the abundant benefits of citizenship, and instead chose a path destined to do lasting harm to immigrants and their communities.

---

[13] SUMPTION & FLAMM, *supra* note 8, at 11.

[14] New York State Department of Labor, *NYS Economy Added 244,200 Private Sector Jobs in July 2020*, https://perma.cc/P6H9-MEM8; Abdel Jimenez, *Illinois unemployment rate hit 16.4% in April, a 44-year high, as coronavirus-related job losses multiplied*, CHICAGO TRIBUNE, (May 21, 2020), https://tinyurl.com/yy7sp4tz.

[15] Oren M. Levin-Waldman, *Income Inequality and Disparities in Civic Participation in the New York City Metro Area*, 20 (2012), https://perma.cc/9LVP-ZTP2; Brian J. McCabe, *Are Homeowners Better Citizens? Homeownership and Community Participation in the United States*, 91 SOCIAL FORCES 929, 941 (2013), https://perma.cc/X22S-BUFD.

**III.    By restricting access to citizenship, the final rule will not only impair municipalities' communities, but also shrink their revenue streams in the midst of fiscal crisis.**

Restricted access to naturalization will significantly affect not only individuals, but also the cities they call home. Cities have long recognized the importance of access to the naturalization process, and many have invested significant resources to assist low-income immigrants with the application process. Municipalities have a particular interest in the economic mobility and personal growth of their foreign-born residents, not only because cities are home to a disproportionate number of foreign-born individuals, or because fair and reasonable access to naturalization strengthens our communities, but also because the individual economic benefits of naturalization in the aggregate translate into significant increased revenue streams through income taxes and a decrease in dependency on public benefits.[16] For instance, if a quarter of New York City residents eligible to naturalize did, in fact, do so, government bodies would see an increase in revenue and decrease in public benefits payments exceeding $200 million. Those funds would be essential to state and municipal treasuries in any climate, but are critical now as we face a once-in-a-generation fiscal crisis.

Since naturalized citizens fare better in the labor market—both as a result of higher employment rates and higher income levels than non-citizens—they also contribute more in income taxes. Increased naturalization will, as a result, generate more income-tax revenue. Illinois, for example, would have the opportunity to tax an additional nearly $130 million of earnings if just a quarter of Chicago's eligible-to-naturalize population obtained citizenship.[17] The challenged rule will suppress access to those funds, curtailing naturalization by erecting a

---

[16] A study of 21 of some of the largest cities in the nation revealed that 29% of their populations were foreign-born compared to just 13% of the nation's population overall. ENCHAUTEGUI & GIANNARELLI, *supra* note 3, at 10.

[17] ENCHAUTEGUI & GIANNARELLI, *supra* note 3, at 19.

significant financial barrier. Governments at each level—but especially cities and states—will be deprived of an important source of new revenue. For example, if only those New York City residents who rely on fee waivers and fee reductions each year declined to naturalize, the City would lose more than $3 million in annual city income tax alone going forward.[18] The annual loss of income tax would be even greater at the state level—approaching $6 million.

As naturalization rates fall, municipalities will also have to forgo the budgetary savings they would otherwise realize from reduced dependency on public benefits. Because naturalized citizens have higher incomes and higher employment rates, increased naturalization leads to a decrease in government spending on public benefits.[19] If just a quarter of New York City's lawful permanent residents naturalized, the city would save close to $12 million on the city's Supplemental Nutrition Assistance Program alone. But if naturalization instead declines and the city's low-income immigrants no longer apply for naturalization—as is bound to occur under the new fee scheme—dependency on these benefits will increase.

Cities have long recognized the significant and clearly documented benefits of its immigrant residents' obtaining citizenship and have invested resources to assist their low-income immigrant populations with the naturalization process. Boston hosts an annual Citizenship Day during which volunteers help with naturalization applications. Last year, this one-day effort alone resulted in 400 individuals filing such applications, with more than half qualifying for fee waivers.[20] New York City has funded programs like NYCitizenship and ActionNYC, which

---

[18] *Id*. at 24; New York City Mayor's Office of Immigrant Affairs, Fact Sheet: Eligible to Naturalize New Yorkers, *supra* note 5, at 5.

[19] ENCHAUTEGUI & GIANNARELLI, *supra* note 3, at 24.

[20] City of Boston, Comment Letter on Proposed Rule to Increase U.S. Citizenship and Immigration Services Fees (Dec. 30, 2019), *available at* https://perma.cc/XLT6-4ZAN.

coordinate outreach activities and guide applicants throughout the naturalization process. Since 2016, ActionNYC has assisted with filing nearly 3,000 naturalization applications—three-quarters of which were accompanied by a request for either a fee waiver or reduction.[21] New York City's efforts are part of a larger initiative to combat poverty, recognizing that naturalization is a key tool in achieving greater economic, social, and political stability.[22]

Despite all of this, DHS's new fee schedule seeks to price out millions of eligible immigrants from obtaining citizenship. If this rule takes effect, millions across the country will lose access to an essential path to economic security and mobility—not due to any question about their entitlement to citizenship, but simply because they cannot afford it. And the cities where they live will also be irreparably harmed in multiple ways, not least by losing the benefit of future revenue streams and fiscal savings stemming from immigrants' economic rise—at a time when municipal budgets are more strapped than ever. In its rulemaking, DHS gave no meaningful consideration to these harms, and for this reason, among several others, the rule should be enjoined.

---

[21] City of New York, Comment Letter on Proposed Rule to Increase U.S. Citizenship and Immigration Services Fees (Dec. 30, 2019), *available at* https://perma.cc/W9LV-ZN5G.

[22] OneNYC 2050, A Vibrant Democracy, 19, *available at* https://perma.cc/J6PH-5PSR.

**CONCLUSION**

Plaintiffs' motion for a preliminary injunction should be granted.


Dated:  September 10, 2020
            New York, New York

Respectfully submitted,


By:        /s/ Jesse Townsend

James E. Johnson
*Corporation Counsel*
*of the City of New York*
Richard Dearing *
Devin Slack *
Jesse Townsend
Anna Gottlieb *
New York City Law Department
100 Church Street
New York, New York 10007
*Attorneys for the City of New York*

* Not admitted to practice in this jurisdiction

(additional counsel listed below)

### LIST OF ADDITIONAL COUNSEL

Marisa Franchini
Corporation Counsel
24 Eagle Street
Albany, New York 12207
*Attorney for the City of Albany*

Esteban A. Aguilar, Jr.
Albuquerque City Attorney
One Civic Plaza NW
4th Floor, Room 4072
Albuquerque, New Mexico 87102
*Attorney for the City of Albuquerque*

Eugene L. O'Flaherty
Corporation Counsel
City of Boston
City Hall, Room 615
Boston, Massachusetts 02201
*Attorney for the City of Boston*

Timothy A. Ball
Corporation Counsel
City of Buffalo
Department of Law
1101 City Hall
65 Niagara Square
Buffalo, New York 14202
*Attorney for the City of Buffalo*

Nancy E. Glowa, Esq.
City Solicitor
City of Cambridge
795 Massachusetts Avenue
Cambridge, Massachusetts 02139
*Attorney for the City of Cambridge*

Mark A. Flessner
Corporation Counsel
for the City of Chicago
121 N. LaSalle St., Room 600
Chicago, IL 60602
*Attorney for the City of Chicago*

Christopher J. Caso
City Attorney
City Attorney's Office
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
*Attorney for the City of Dallas*

Betsy Cavendish
General Counsel
Executive Office of the Mayor
1350 Pennsylvania Ave NW, Suite 300
Washington, District of Columbia 20004
*Attorney for the Mayor*
*of the District of Columbia*

Ronald C. Lewis
City Attorney
City of Houston Legal Department
900 Bagby, 4th Floor
Houston, Texas 77002
*Attorney for the City of Houston*

Peter J. Baker
Corporation Counsel
Department of Law
City of Jersey City
City Hall
280 Grove Street, 3rd Floor
Jersey City, New Jersey 07302
*Attorney for the City of Jersey City*

Michael N. Feuer
City Attorney
200 N. Main Street, 8th Floor
Los Angeles, CA 90019
*Attorney for the City of Los Angeles*

Margaret L. Carter
Daniel R. Suvor
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
*Attorney for the County of Los Angeles*

James R. Rowader, Jr.
Minneapolis City Attorney
350 South Fifth Street, Room 210
Minneapolis, Minnesota 55415
*Attorney for the City of Minneapolis*

Marcel S. Pratt
Philadelphia City Solicitor
City of Philadelphia
Law Department
1515 Arch Street, 17th Floor
Philadelphia, Pennsylvania 19102
*Attorney for the City of Philadelphia*

Tracy Reeve
City Attorney
Portland Office of the City Attorney
1221 SW Fourth Avenue, Room 430
Portland, Oregon 97204
*Attorney for the City of Portland*

Lyndsey M. Olson
City Attorney, City of Saint Paul
400 City Hall and Court House
15 West Kellogg Boulevard
Saint Paul, Minnesota 55102
*Attorney for the City of Saint Paul*

James R. Williams
County Counsel
70 West Hedding Street
East Wing, Ninth Floor
San José, California 95110-1770
*Attorney for the County of Santa Clara*

Peter S. Holmes
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, Washington 98104-7097
*Attorney for City of Seattle*

Michael M. Lorge
Village of Skokie
Corporation Counsel
5127 Oakton Street
Skokie, Illinois  60077
*Attorney for the Village of Skokie*

Francis X. Wright, Jr.
City Solicitor
City of Somerville
93 Highland Avenue
Somerville, Massachusetts 02143
*Attorney for the City of Sommerville*

William C. Fosbre
City Attorney
747 Market Street, Room 1120
Tacoma, Washington 98402
*Attorney for the City of Tacoma*

Mike Rankin
City Attorney
City of Tucson, Arizona
PO Box 27210
Tucson, Arizona 85726-7210
*Attorney for the City of Tucson*

## CERTIFICATE OF SERVICE

I hereby certify that on the date given below, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the persons registered as CM/ECF recipients for this case.

Date: September 10, 2020          By: ___*s/ Jesse Townsend*___
                                      Jesse Townsend