IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWEST IMMIGRANT RIGHTS PROJECT, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:19-cv-3283 (RDM) |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' SUPPLEMENT
TO THE SEPTEMBER 24, 2020 HEARING**

Pursuant to the Court's instruction on the record at the September 24, 2020 Hearing on Plaintiffs' Motion for Section 705 Relief and Preliminary Injunction (Hearing), and the Court's September 24, 2020 minute order, Defendants respectfully submit the following Supplement to the Hearing:

## I. Supplemental Citations.

First, the Court asked for supplemental record citations for explanations of what USCIS fraud detection, fraud deterrence, intelligence and national security activities–including, specifically, as those activities are conducted by the Fraud Detection and National Security Directorate (FDNS)–and Systematic Alien Verification for Entitlements (SAVE) Program work funded by the Rule each entail. In addition to Defendants' briefing, *see* ECF No. 69 at 50-53, Defendants direct the Court to:

- 84 Fed. Reg. 62,294 (describing FDNS applicant vetting as including "social media screenings" and "in-person interviews of applicants for certain immigration benefits").

- 84 Fed. Reg. 62,307-08 (discussing FDNS's Administrative Site Visit and Verification Program).

- Immigration Examinations Fee Account (IEFA) Fee Review Supporting Documentation (Apr. 2019) (2AR298) (explaining FDNS fraud detection and prevention, national security, and intelligence activities).[1]

- 84 Fed. Reg. 62,281 & 85 Fed. Reg. 46,805 (indicating that the agency's Activity-Based Cost (ABC) modeling was discussed in the rulemaking's public demonstration of the ABC modeling software, which Plaintiff CASA attended; this included inputs like FDNS and SAVE Program activities[2]).

- 72 Fed. Reg. 29,867-68 (2007 fee rule's explanation of FDNS authority and activities following transfer and consolidation of functions "from INS to USCIS by the [Homeland

---

[1] The Court asked Defendants to provide this document from the administrative record, which was made available with the Proposed Rule. It is attached as Defendants' Exhibit 8.

[2] Attendees' public comments following the demonstration indicate that the meeting addressed FDNS costs and activities. See attached Exhibit 9 at 7-8 (2AR26982-83) (comment by Boundless Immigration, Inc. indicating in its "Summary of USCIS meeting" that FDNS and SAVE Program activities were discussed among other "prorated overhead" activity costs).

Security Act]").[3]

- 63 Fed. Reg. 1,778-79 (1998 fee rule's explanation of USCIS predecessor agency's fraud detection and prevention and intelligence activities' "concentration on individual applications" and funding by IEFA revenue, prior to those functions' transfer to USCIS).
- 85 Fed. Reg. 46,796 (explaining the need for "security screening, background checks, and interviews" as part of fee-funded applicant vetting process).
- 84 Fed. Reg. 62,284 & n.13 (describing SAVE Program and its funding).
- 2AR298-99 (explaining SAVE Program work assisting benefit-issuing agencies by determining the current, adjudicated immigration status of applicants).
- 81 Fed. Reg. 26,911-12, 26,914 (2016 fee rule's description of SAVE Program, including agency's declined budget requests for Congressional appropriations to otherwise cover SAVE costs).[4]

Because "an agency is not invariably required to disclose" public information in the course of rulemaking, *Shands Jacksonville Med. Ctr. v. Burwell*, 139 F. Supp. 3d 240, 263-64 (D.D.C. 2015), Defendants include particularly relevant citations for information that the agency was aware was publicly available during the pendency of the rulemaking and which is responsive to the Court's first request.

- 83 Fed. Reg. 36,950-51 (July 2018) (describing USCIS "background and security checks . . . as part of the eligibility determination for a benefit or request," as well as interagency coordination on intelligence, criminal, and national security matters discovered as a result of those checks).
- USCIS, Delegation of Authority to Conduct Certain Law Enforcement Activities (Mar. 28, 2017), *available at* https://www.uscis.gov/sites/default/files/document/foia/Delegation_to_Conduct_Certain_Law_Enforcement_Activities.pdf (describing authority to conduct

---

[3] Prior fee rules were included in this Rule's administrative record. *See* Certified List of Contents, ECF No. 51-2 at 3. And they were cited in the Proposed Rule. 84 Fed. Reg. 62,285.

[4] Cited in the Proposed Rule at both 84 FR 62,284 and 62,285.

- enhanced vetting of immigration benefit applicants).

- About Fraud Detection and National Security Directorate, https://www.uscis.gov/about-us/directorates-and-program-offices/fraud-detection-and-national-security-directorate (describing FDNS's work "to ensure immigration benefits are not granted to individuals who pose a threat to national security or public safety, or who seek to defraud our immigration system").

- About SAVE, https://www.uscis.gov/save/about-save/about-save (describing SAVE Program's work "to provide fast, secure and reliable immigration status information to assist benefit-granting agencies in maintaining their program integrity" by verifying immigration or citizenship status of applicants, including links to SAVE Governing Laws and the SAVE Verification Process).

- H.R. Rep. 112-492, 125-26 (2012) (Committee on Appropriations report accompanying 2013 DHS appropriations bill explaining: "Revenues from fees paid by persons applying for immigration benefits constitute the majority of USCIS's resources, and support adjudication of applications for immigration benefits as well as government investigations aimed at preventing fraud within the immigration system" and SAVE).

Second, the Court asked for supplemental record citations for explanations of why fraud detection and fraud prevention costs have increased in recent years. In addition to Defendants' briefing, *see* ECF No. 69 at 50-53, Defendants direct the Court to:

- Exec. Order No. 13780, 82 Fed. Reg. 13,209, 13,215 (March 6, 2017) (2AR2210-20) (mandating enhanced vetting for admissibility and other immigration benefits).[5]

- *Hearing on "A Review of the FY 2020 Budget Request for [CBP, ICE, and USCIS]"* (May 9, 2019) (testimony of Tracy Renaud, Acting Deputy Director of USCIS) (2AR3542-43) (describing increased costs of implementing EO 13780 regarding vetting immigration benefit applicants).[6]

---

[5] Full document from the administrative record attached as Exhibit 10.
[6] Full document from the administrative record attached as Exhibit 11.

- 84 Fed. Reg. 62,304 & n.106 (citing EO 13780 and explaining that "background check requirements have increased").

- 84 Fed. Reg. 62,294 (describing "greater use of social media screenings and more in-person interviews of applicants for certain immigration benefits" in enhanced applicant vetting).

- 84 Fed. Reg. 62,309-10 (explaining that conducting "a background check for each named beneficiary" sometimes requires numerous background checks per petition).

- 84 Fed. Reg. 62,286 (explaining need for "increased background investigations").

- 85 Fed. Reg. 46,872 (describing costs of "increased background checks").

- 85 Fed. Reg. 46,884 ("DHS believes these operational changes are necessary to ensure that applicants seeking immigration benefits are properly vetted and eligible for the benefit for which they have applied.").

- 84 Fed. Reg. 62,281; 85 Fed. Reg. 46,805 (FDNS's costs were discussed in the rulemaking's public demonstration of the ABC modeling software, which Plaintiff CASA attended, *see supra* Note 2).

Third, the Court noted it would be helpful if the parties were to provide electronic copies of the record materials cited in their briefing and argument that are not already before the Court. Accordingly, Defendants direct the Court to:

- Exhibit 12: DHS, USCIS, FY 2019/2020 IEFA Fee Review Model Supporting Documentation (Aug. 2019) (2AR9215-84) (provided in Proposed Rule docket to detail ABC model and payroll title analysis used to project agency costs).

- Exhibit 13: Final Rule Regulatory Impact Analysis (July 22, 2020) (2AR619-790).

- Exhibit 14: USCIS National Performance Reports 2016-2020 (2AR82612-17) (detailing agency's backlog (see columns entitled "Net Backlog" for case count of USCIS's backlog and estimated amount of work hours to complete that backlog ("EUs")) and annual application "Receipts").

**II.     *In re Grand Jury* Resolved the Issue Raised Here.**

The D.C. Circuit has answered, in the affirmative, whether a statutorily-designated acting head of the Department assumes the duties of the permanent head of the Department. In *In re Grand Jury Investigation*, the D.C. Circuit held that "an Acting Attorney General *becomes the head of the Department* when acting in that capacity *because an acting officer is vested with the same authority* that could be exercised by the officer for whom he acts." 916 F.3d 1047, 1055 (D.C. Cir. 2019) (emphases added); *see also id.* at 1056 ("[T]he Deputy Attorney General *became the head of the Department by virtue of becoming the Acting Attorney General* as a result of a vacancy . . . ." (emphasis added)).

The D.C. Circuit's holding extends not only to duties statutorily assigned to the head of the department, but also to duties under the Appointments Clause. In *In re Grand Jury*, "Acting Attorney General Rosenstein was the 'Head of Department' *under the Appointments Clause* as to the matter on which the Attorney General was recused." *Id.* at 1054-1055 (emphasis added).[7] The court's holding in *In re Grand Jury* is clear: a duly appointed acting head of Department becomes head of Department and is vested with all of the authority vested in the permanent office, including the constitutional capacity to appoint inferior officers.

The question of whether Special Counsel Robert Mueller was properly appointed by the head of a Department under the Appointments Clause was squarely before the Court. The appellant expressly challenged: "3. Whether Congress 'by Law vest[ed] the Appointment' of the Special Counsel as an 'inferior Officer []' in 'Head of the [Justice] Department[ ],' and thus, under the 'Excepting Clause,' was unconstitutionally appointed because he was required to be—but was not—appointed by

---

[7] Numerous other district courts have addressed the same or similar facts as *In re Grand Jury*—appointment of a special investigator or counsel by the Deputy Attorney General—and found no deficiency under the Appointments Clause. *See United States v. Libby*, 429 F. Supp. 2d 27, 28, 31 (D.D.C. 2006); *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 607 (D.D.C. 2018); *United States v. Manafort*, 321 F. Supp. 3d 640, 657 (E.D. Va. 2018). In *Libby*, for example, Attorney General John Ashcroft recused himself from a criminal investigation, making Deputy Attorney General James Comey the Acting Attorney General for purposes of the matter. *See Libby*, 429 F. Supp. 2d at 28. Mr. Comey, in turn, appointed a special prosecutor to investigate the case. *Id.* The court noted that Mr. Comey, "pursuant to 28 U.S.C. § 508(a), was vested with all the powers of the Attorney General" for purposes of the investigation, including the authority to appoint a Special Counsel. 429 F. Supp. 2d at 31.

5

Attorney General Jeff Sessions rather than by Deputy Attorney General Rod Rosenstein." *In re Grand Jury*, Appellant's Br. 1-2 (D.C. Cir. No. 18-3052) (attached as Exhibit 15).[8] The United States also explicitly addressed the issue there in defending the Special Counsel's appointment, arguing that "an *acting 'Head of Department'* may make appointments *under the Appointments Clause*" based on "the principle that an acting officer is vested with the full authority of the officer for whom he acts." Appellee's Br. 45-46 (internal quotation marks and brackets omitted) (attached as Exhibit 16).[9]

The D.C. Circuit resolved that question by holding that the Acting Attorney General, as head of Department even for the sole purpose of the matter on which the Attorney General was recused, was vested with the Attorney General's constitutional authority under the Appointments Clause. *See In re Grand Jury*, 916 F.3d at 1054-1056. Indeed, the court adopted nearly verbatim the United States' position—including the authority it relied on—in holding that the Acting Attorney General became "Head of Department" under the Appointments Clause. *Compare* Ex. 16 at 45-46 ("[A]n acting 'Head[] of Department' may make appointments under the Appointments Clause. That proposition follows the principle that '[a]n acting officer is vested with the full authority of the officer for whom he acts.'" (quoting *Acting Officers*, Op. O.L.C. 119, 120 (1982) (citing *Keyser v. Hitz*, 133 U.S. 138, 145-146 (1890); *Ryan v. United States*, 136 U.S. 68, 81 (1890))), *with In re Grand Jury*, 916 F.3d at 1055 ("Acting Attorney General Rosenstein was the 'Head of Department' under the Appointments Clause . . . and an Acting Attorney General becomes the head of the Department when acting in that capacity because an acting officer is vested with the same authority that could be exercised by the officer for whom he acts"

---

[8] By contrast, Plaintiffs here did *not* argue that either Mr. McAleenan or Mr. Wolf was an improperly appointed inferior officer under the Appointments Clause, but rather only that their appointments violated the statutory requirements of the Homeland Security Act and Federal Vacancies Reform Act. *See* Pls.' Br. at 12-20. Plaintiffs, at most, briefly present a constitutional avoidance argument in support of their *statutory* positions, *see id.* at 17-18, but that is no substitute for pressing an actual constitutional argument. *See, e.g.*, *O'Brien v. Wilkie*, 948 F.3d 1339, 1341 n.2 (Fed. Cir. 2020) (noting that while appellant invoked the "doctrine of constitutional avoidance," he did not argue that the agency action or underlying statute violated the Constitution, thereby forfeiting the constitutional argument).

[9] The Special Counsel's brief acknowledges that "[Appellant] does not seem to disagree" with the proposition that an acting head of Department may appoint inferior officers. *See In re Grand Jury*, Appellee's Br. 46 (D.C. Cir. No. 18-3052). That does not change the fact that this legal conclusion was a necessary antecedent to the court's holding that Special Counsel Mueller was lawfully appointed, and thus the binds the Court here. *See, e.g.*, *United States v. Gamble*, 709 F.3d 541, 546 (6th Cir. 2013) ("a statement necessary to the court's holding" is "binding").

(citing *Ryan*, 136 U.S. at 81; *Keyser*, 133 U.S. at 145-146; *Acting Officers*, 6 Op. O.L.C. at 120)).

The court's decision in *In re Grand Jury* therefore resolved more than the question of whether the Deputy Attorney General became Acting Attorney General under the relevant statutory scheme; it also resolved whether the Acting Attorney General was *constitutionally* competent to appoint inferior officers. Indeed, the D.C. Circuit's twin conclusions that (1) the Special Counsel was an inferior officer, *id.* at 1052-1053; and (2) the Deputy Attorney General as acting head of the Department appropriately appointed the Special Counsel, *id.* at 1054-1056, are only relevant if the court necessarily held that an acting head of Department can appoint inferior officers. But we need not guess, because the court said so expressly. *See id.* (finding the acting Secretary to be "'Head of Department' under the Appointments Clause"). That ruling resolves any question here about the Acting Secretary's authority to appoint inferior officers. A validly designated Acting Secretary of Homeland Security is vested with all of the authority of the office of the Secretary, including the constitutional authority to appoint inferior officers.

Nor is there any basis to distinguish *In re Grand Jury* on the statutory scheme applicable to the Deputy Attorney General. Section 508(a) of Title 28 provides that, "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General." That section cannot be read as a recognition by Congress that the Deputy Attorney General is also a head of Department, for two reasons.

First, Congress has unequivocally stated that "[t]he Attorney General is the head of the Department of Justice." 28 U.S.C. § 503. The D.C. Circuit acknowledged that fact in holding that the Deputy Attorney General was the head of the Department *solely* "by virtue of becoming the Acting Attorney General." *In re Grand Jury*, 916 F.3d at 1056. The court made no suggestion that the Deputy Attorney General, prior to becoming Acting Attorney General, was head of the Department. Indeed, since the Deputy Attorney General is under the supervision of the Attorney General, he is not even a principal officer. *See Edmond v. United States*, 520 U.S. 651, 662 (1997) ("Generally speaking . . . [w]hether one is an 'inferior officer' depends on whether he has a superior").

Second, the D.C. Circuit recognized that § 508(a) is not unique among agency-specific vacancy statutes. *See In re Grand Jury*, 915 F.3d at 1056 (explaining that "[o]ther statutes may temporarily authorize an officer or employee to perform the functions and duties of a specific office," and suggesting § 508 is one such statute).[10] That statute authorizes the Acting Attorney General to perform the duties of the Attorney General including the "authority to appoint inferior officers because that is part of the authority that could be exercised by the Attorney General." *In re Grand Jury*, 916 F.3d at 1056. Section 113(g)—the Homeland Security analogue to § 508—serves the same function here with respect to the Secretary of Homeland Security, including with respect to appointment power.

To be sure, § 508(a) expressly designates the Deputy Attorney General as the acting officer when the Attorney General is absent, disabled, or the office is vacant, whereas § 113(g)(2) authorizes the Secretary to make the designation. But that distinction is immaterial here. Section 508(b) authorizes the Attorney General to designate a further order of succession and courts have found no distinction between acting service under § 508(a) and § 508(b). *See United States v. Pellicci*, 504 F.2d 1106, 1107 (1st Cir. 1974) ("Appellant attempts to distinguish between the wording of 508(b) from that of 508(a) . . . .[but t]here is no basis for concluding that one 'acting' as Attorney General has fewer than all the powers of that office."); *cf. United States v. McGee*, 173 F.3d 952, 956 (6th Cir. 1999) (holding that the acting Associate Attorney General "may perform the functions and duties of, and act as, the Associate Attorney General" because "[a]n acting official possesses all the powers that the official would normally possess").[11] Thus, nothing in the text of § 113(g) suggests any basis to distinguish it from § 508.[12] *In re*

---

[10] For a comprehensive list of agency-specific vacancy statutes, including § 508 and § 113, see Anne J. O'Connell, *Acting Agency Officials and Delegations of Authority*, Administrative Conference of the United States at Table 18 (Revised Draft Report: Dec. 1, 2019), *available at* https://www.acus.gov/sites/default/files/documents/final-report-acting-agency-officials-12012019.pdf.

[11] Section 113(g)(1), similar to § 508(a), expressly designates the Under Secretary for Management to serve as Acting Secretary when the Secretary and Deputy Secretary are absent, disabled or the office is vacant. And there is likewise no basis for concluding that an Acting Secretary serving under § 113(g)(2) has any fewer powers that one serving under § 113(g)(1).

[12] To the extent § 508 could be read to confer "germane duties" on the Deputy Attorney General for purposes of serving as Acting Attorney General, § 113 likewise would confer such "germane duties" on those in the order of succession. *See Weiss v. United States*, 510 U.S. 163, 174 (1994); *Shoemaker v. United States*, 147 U.S. 282, 301 (1893).

*Grand Jury Investigation*, 315 F. Supp. 3d 602, 663 (D.D.C. 2018) (acknowledging that "Section 508(a)'s language is of the sort recognized to authorize the service of *acting officers*" (emphasis added)).

Finally, even if *In re Grand Jury* were not binding authority—which it is—its holding demonstrates that it is not constitutionally suspect for an Acting Secretary to exercise the Secretary's authority under § 113(g)(2) to designate an order of succession. Any finding that an acting head of Department *cannot* appoint other officers would conflict with two-and-a-half centuries of practice. *See N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017) ("Since President Washington's first term, Congress has given the President limited authority to appoint acting officials to temporarily perform the functions of a vacant PAS office without first obtaining Senate approval.").[13]

Further, the designation of an Acting Secretary is not an "appointment" for purposes of the Appointments Clause, but rather an assignment of additional germane duties to another official of the Department. *See United States v. Eaton*, 169 U.S. 331, 343 (1898) (affirming the designation of an acting consul general by an executive official other than the President); *see also* Heilpern, *Acting Officers*, 27 Geo. Mason L. Rev. 263, 282 (2019) (explaining that the acting consul general was designated by the prior consul general, who had fallen ill). Here, Mr. McAleenan—who was, at the time, Senate-confirmed to the germane office of CBP Commissioner—did not *appoint* Mr. Wolf to any position. Rather, by designating Mr. Wolf's position in the succession order, Mr. McAleenan merely conferred additional duties on Mr. Wolf—who himself is Senate-confirmed to a germane position, that of the Under Secretary for Strategy, Policy, and Plans—to exercise on a temporary basis.[14] Understood this

---

[13] As the Court correctly noted at the hearing, Defendants have not argued in opposition to Plaintiffs' motion that an acting head of a Department is not an officer for purposes of the Appointments Clause. But whether the Acting Secretary is properly classified as an "inferior officer" is not relevant to the present dispute—what is clear is that an Acting Secretary possesses the same authority as the officer for whom the official acts, regardless of officer status. *See United States v. Eaton*, 169 U.S. 331 (1898); *In re Grand Jury*, F.3d at 1054-1056; *see also Designating an Acting Attorney Gen.*, 42 Op. O.L.C. __, 2018 WL 6131923, at *5 (Nov. 14, 2018) (concluding that "it does not matter whether an acting official temporarily filling a vacant principal office is an inferior officer or not an 'officer' at all within the meaning of the Constitution," so long as the acting position is not a principal office requiring Senate confirmation, which "long-standing historical practice and precedents" suggest it is not).

[14] The district court in *In re Grand Jury* further found that, even if the Deputy Attorney General was not acting as head of Department when appointing the Special Counsel, the Attorney General statutorily *delegated* that power to the Deputy Attorney General under 28 U.S.C. § 510. *See In re Grand*

way, the present case presents no significant constitutional issue.[15]

Dated: September 28, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch

JULIE STRAUS HARRIS
DC Bar No. 1021298
Senior Trial Counsel

 /s/ Charles E.T. Roberts
CHARLES E.T. ROBERTS
PA Bar No. 326539
CHETAN A. PATIL
DC Bar No. 999948
KATE TALMOR
Maryland Bar
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 305-8628
Fax: (202) 616-8470
Email: charles.e.roberts@usdoj.gov

*Attorneys for Defendant*

---

*Jury Investigation*, 315 F. Supp. 3d 602, 666 (D.D.C. 2018) (distinguishing "vesting" appointment power in a principal officer and the "exercise" of that power through lawful delegation). *A fortiori*, a statutorily-designated Acting Secretary has the authority to appoint an inferior officer.

[15] In response to the Court's request, Defendants have also attached as Exhibit 17 the Appellant's Reply Brief in *In re Grand Jury* and, as Exhibit 18, a Letter from Neal J. Swartz, Associate General Counsel for General Law, DHS to Hon. Michael R. Pence, President of the Senate (Apr. 11, 2019), which was filed at ECF No. 41-2 in *Casa de Maryland, Inc. v Wolf*, No. 8:20-cv-02118-PX (D. Md. Aug. 3, 2020). Further, during the hearing, the Court raised the issue of the contents of the redacted portion of Secretary Nielsen's April 9, 2019 order, which is filed at ECF No. 50-4 at 127. While Defendants maintain that the redacted portions contain privileged information, Defendants are willing to submit an unredacted version of the document *ex parte* to the Court for *in camera* review if the Court so orders.